GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JOSE ORTIZ and LAURA WILLIS ALBRIGO, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

DECKERS OUTDOOR CORP.,

Defendant.

Case No. 3:25-cv-09631-RFL

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE THE CLASS ACTION COMPLAINT

Hon. Rita F. Lin

Date: March 24, 2026
Time: 10:00 AM
Location: San Francisco, Crtrm 18, 15th Fl.

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 4
III. ARGUMENT ........ 6
A. Plaintiffs' Allegations Satisfy Rule 9(b)'s Heightened Pleading Requirements. ........ 6
B. Plaintiffs Sufficiently Plead their Wiretapping Claims under CIPA § 631(a). ........ 12
1. Plaintiffs allege that third parties intercepted the contents of communications. ........ 13
2. Plaintiffs allege that the third parties attempted to learn the contents of communications while in transit. ........ 15
C. Plaintiffs Sufficiently Plead their Claims for Unjust Enrichment (Count VI). ........ 16
D. Defendant's Motion to Strike Must Be Denied. ........ 17
E. Plaintiffs Request Leave to Amend If Necessary. ........ 19
IV. CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ..................... 17

*Amin v. Subway Rests., Inc.*, No. 21-CV-00498-JST, 2022 U.S. Dist. LEXIS 243270 (N.D. Cal. July 7, 2022) ........................ 3

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................................................... 14

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ...................... 10

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) ............................................................................... 16

*Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507, at *6 (N.D. Cal. Jan. 4, 2021) ........................................................................................................ 9

*Casillas v. Six Flags Ent. Corp.*, No. 2:25-cv-6824-CBM-PD, 2025 U.S. Dist. LEXIS 260100 (C.D. Cal. Dec. 15, 2025) ............. 7

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ........................................................................... 13

*D'Angelo v. Penny Opco, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) ................ 3

*Deivaprakash v. Conde Nast Digit.*, No. 25-cv-04021-RFL, 2025 LX 431293 (N.D. Cal. Sep. 30, 2025) ..................................................................................................... 14

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)................................................................................ 19

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025)........................................................................ 16

*Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018)....................................... 9

*Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ............ 3, 15

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) ............................................ 18

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) ............................................................ 18

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) .... 2, 7, 10, 18

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)........... 1, 3, 7, 10

*Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 LX 75435, at *7 (N.D. Cal. Jan. 6, 2026)............................................................................................. 14

*Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. July 19, 2024) ................................................................................. 14

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 14
*In re Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 16
*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014).......... 13, 14
*Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) .......... 15
*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022).......... 13
*Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MSB, 2024 U.S. Dist. LEXIS 7873 (S.D. Cal. Jan. 12, 2024) .......... 13
*Mercury Ins. Servs., LLC v. Curley*, No. 8:24-cv-01336-JVS-AS, 2025 LX 242609 (C.D. Cal. Mar. 28, 2025).......... 19
*Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024).......... 15
*Montalti v. Catanzariti*, 191 Cal.App.3d 96, 100 (1987).......... 19
*Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721 (9th Cir. 2017) .......... 8
*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025).......... 7, 9, 10
*Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048 (N.D. Cal. 2004).......... 18
*Ribas v. Clark*, 38 Cal. 3d 355 (1985) .......... 15
*Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. April 4, 2025) .......... 10
*Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024).......... 12
*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).......... 19
*Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234 (N.D. Cal. Oct. 16, 2025) .......... 14, 17
*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......... 17
*Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 LX 43836 (N.D. Cal. Jan. 27, 2026).......... 7
*Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011).......... 18
*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 LX 354693 (N.D. Cal. Aug. 4, 2025) .......... 18
*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024).......... 2, 14, 16
*Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) .......... 16

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 15, 16

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 7, 10

*Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 LX 594493 (N.D. Cal. Dec. 17, 2025) .......... 9, 19

*Yoon v. Lululemon*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 13

**Statutes**

Cal. Penal Code § 631(a) .......... 3, 12, 13, 15

Cal Penal Code § 638.51 .......... 7

**Rules**

Fed. R. Civ. P. 9(b) .......... 2, 6, 7, 10

## I. INTRODUCTION

Plaintiffs Jose Ortiz and Laura Willis Albrigo[1] ("Plaintiffs") filed this class action complaint ("CAC" or "Complaint") against Deckers Outdoor Corp. ("Defendant" or "Deckers") for aiding third parties to collect California users' private communications ***contrary to those users' express instructions*****.** When consumers visit Defendant's ecommerce websites,[2] they are presented with a popup cookie consent banner that is identical on each of the Websites. The banner discloses the use cookies and expressly represents that users may control (and reject) tracking, including by rejecting the sale or sharing of their personal information. Defendant further promises that, rather than just accepting cookies, users "have the option of disabling certain types of cookies" on the Websites. But Defendant's representations were false.

In truth, Defendant enabled third-party advertising, analytical and tracking cookies on the devices of California visitors to the Websites, *even after those visitors explicitly disabled all such cookies and instructed Defendant not to sell or share their personal information*. As a result, Defendant caused the third parties to collect and analyze user data in real time, including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers" (collectively, "Private Communications") and create or supplement cross context user profiles ***despite promising not to do so***. ECF 1 ("CAC") ¶¶ 2-5, 21, 25, 31-32. This conduct is a highly offensive violation of Plaintiffs' privacy rights and deceptive.

Numerous courts—including Judge Orrick, Judge Tigar, and others—have found materially identical allegations sufficient to state claims for relief. *See, e.g., Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) (Tigar, J.) (denying motion to dismiss complaint alleging defendant's website violated CIPA and privacy laws by using tracking cookies after expressly promising it would not do so, and finding plaintiff's

---

[1] Throughout its motion to dismiss, Defendant mistakenly refers to Albrigo as a male.

[2] Including www.hoka.com; www.teva.com; www.sanuk.com; www.ugg.com; and www.koolaburra.com (collectively, the "Websites"). Koolaburra was taken down around March 31, 2025.

complaint sufficiently pled for Rule 9(b)'s standard); *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) (Orrick, J.) (same). Defendant tellingly opted not to bring either opinion to this Court's attention. Nor does it mention any other case decided in this context—i.e., where a defendant falsely promised not to track website visitors or sell or share their personal information and did so anyway.

Instead, Defendant attempts to avoid responsibility for its privacy violations by arguing that it should be excused because it "voluntarily began" implementing a "cookie management tool—including a 'cookie banner' pop-up notification—to promote transparency and offer users a simple, low-burden way to input their preferences regarding certain third-party technologies used on Deckers' Websites." ECF 18 ("Def.'s Mot.") at p. 10. But, to Plaintiffs' knowledge, no judge (anywhere) has condoned misleading consumers even if done "voluntarily."

Defendant similarly refuses to acknowledge that its own misrepresentations—that Website(s) visitors can indeed manage cookies for private browsing—creates a reasonable expectation of privacy for Website visitors. Instead, it uses a straw man: arguing that nowhere on the Websites does it promise that a user can reject *all* cookies (including "essential" cookies). But this misses the point; this case is not about Defendant's use of "essential" cookies. Defendant promised to honor a user's choice to reject *non-essential* cookies (including third-party cookies used for targeted advertising) and not to sell or share personal information, and then willfully violated those promises. As courts in this District rule, "defendant's representations that sensitive information would not be disclosed" make ensuing disclosures (in violation of those representations) highly offensive. *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024).

Defendant's remaining arguments fare no better. First, Defendant attempts to rewrite the Complaint to attack Plaintiffs as testers, who comb the internet "to test the functionality of companies' voluntary 'cookie banners'." (Def's Mot. at p. 8.) But such facts are nowhere in the Complaint. To the contrary, each Plaintiff expressly disavows such a practice. CAC ¶¶ 129, 140 (stating each Plaintiff "is not a consumer advocate, a 'tester,' or a compliance auditor that visited the Hoka Website to test or evaluate Defendant's privacy practices"). It is telling that Defendant begins its motion by attributing

facts to Plaintiffs that do not appear anywhere in the Complaint in an effort to avoid liability for its alleged conduct.

As to Plaintiffs' claims sounding in fraud, "these allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *37–38 (citing *Amin v. Subway Rests., Inc.*, No. 21-CV-00498-JST, 2022 U.S. Dist. LEXIS 243270, at *4 (N.D. Cal. July 7, 2022)). Plaintiffs' wiretapping claims under CIPA § 631(a) likewise survive because Plaintiffs' "allegations that [communications contents] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC*, 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023).

Finally, Defendant moves to strike Plaintiffs' allegations concerning the Sanuk website as "immaterial" and "impertinent." Deckers specifically claims that the Sanuk website has not been under its control since August 15, 2024, when the Sanuk brand was acquired by Lole Brands. It further argues that the CIPA claims have expired because Plaintiffs did not file the Complaint until November 7, 2025, which was more than a year after August 15, 2024. This argument is factually and legally flawed.

The critical date for purposes of the statute of limitations is not when Defendant sold the Sanuk brand but when Plaintiffs discovered that Defendant was lying to them relative to when they filed the Complaint. The Complaint alleges that Plaintiff Albrigo was unaware of Defendant's violations at the time of her visits to the Websites (including the Sanuk Website). (CAC ¶¶ 144, 146, 148, 149.) Although Plaintiff Albrigo visited the Sanuk Website prior to Defendant's sale of Sanuk, she did not discover Defendant's violations until later, within a year of filing the Complaint. The Complaint does not allege or suggest otherwise. The Complaint does not allege or suggest otherwise. Accordingly, Defendant cannot carry its burden to show that Plaintiffs have pleaded themselves out of any claims regarding the Sanuk Website by specifically alleging all the facts necessary to conclusively establish Defendant's affirmative defense based on the statute of limitations.

Furthermore, even if the CIPA claims were ultimately found to be untimely with respect to the Sanuk Website, there are additional claims as to the Sanuk Website with lengthier statutes of limitations such as fraud.

This Court should deny Defendant's motion in its entirety.

## II. FACTUAL BACKGROUND

When consumers, including Plaintiffs, visited the Websites during the class period, the Websites immediately displayed a popup cookie consent banner. As depicted in the screenshot below, the cookie consent banner stated, "This website utilizes technologies such as cookies to enable essential site functionality, as well as for analytics, personalization, and targeted advertising purposes." The banner then purported to provide users the opportunity to "Manage Preferences" as shown in the following screenshot from the Hoka Website:




(CAC ¶ 26.)

When Plaintiffs and other users of the Websites clicked or selected the "Manage Preferences" link, they were then presented with Defendant's "Storage Preferences" window. There, Defendant further represented that users "have the option of disabling certain types of cookies," including all categories of Targeted Advertising, Personalization, and Analytics cookies (except the "Essential" cookies, which Defendant represented were "[r]equired to enable basic website functionality" that users "may not disable"). In addition, Defendant further represented that Website users could opt out of the sale or sharing of their personal information by adjusting the toggle button or setting to do so, then clicking or selecting the "Save" button. This is shown in the following exemplar screenshots from the Hoka Website:




CAC ¶ 27.

Plaintiffs and other of the Websites' users who adjusted the available toggle buttons or settings to disable or reject all cookies, including all categories of Targeted Advertising, Personalization, and Analytics cookies (except those cookies "Essential" for the Websites to function), as well as opt out of the sale or sharing of personal information, thereby indicating their choice and/or agreement to decline or reject all non-essential cookies and tracking technologies in use on the Websites, could then continue to browse the Websites after clicking or selecting the "Save"

button, as the popup cookie consent banner and Storage Preferences window disappeared. (CAC ¶ 28.)

Defendant's popup cookie consent banner and Storage Preferences window led Plaintiffs, and all those users of the Websites similarly situated, to reasonably believe that they disabled or rejected all cookies and tracking technologies, especially those used to "deliver advertising that is more relevant to you and your interests" and those used to sell or share personal information. The banner and Storage Preferences window further reasonably led Plaintiffs and those Websites' users similarly situated to believe that Defendant would not allow third parties, through cookies, to access their Private Communications with the Websites, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, as well as opt out of the sale of sharing of all user personal information. (CAC ¶ 29.)

Defendant's representations were false. Defendant did not honor Plaintiffs' or other users' choices. Instead, Defendant caused the Third Parties' tracking cookies to be placed on the Websites' users' browsers and devices and/or transmitted to Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick, Google Analytics, and YouTube), Microsoft Corporation (Microsoft Bing), Snap Inc. (SnapChat), and Tealium, Inc. along with user data. (CAC ¶¶ 2, 30-36, 44-121.) Contrary to its promises, Defendant knowingly enabled the Third Parties to collect user data in real time that discloses the Websites' visitors' Private Communications, including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. (Id.)

## III. ARGUMENT

### A. Plaintiffs' Allegations Satisfy Rule 9(b)'s Heightened Pleading Requirements.

Plaintiffs' allegations satisfy Rule 9(b)'s heightened pleading requirements. As Judge Tigar held when evaluating materially identical allegations under 9(b)'s standard; "[t]he complaint states

that the 'who' is [Defendant]; the 'what' are misrepresentations by [Defendant] through the popup banner offering users the option to ["decline all" cookies]; the 'when' is the … occasion[s] that [Plaintiff] visited [Defendant's] website … ; the 'where' is on [Defendant's] website; and the 'how' is through the storage of cookies on users' devices that transmit personal information about the users. These allegations satisfy the 'who, what, when, and where' of Rule 9(b)." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *21–22; *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now.").[3] Here, Plaintiffs plead the same who, what, when, and where as to the Websites and their enabling of third-party advertising, analytical and tracking cookies on the devices of California visitors to the Websites, *even after those visitors explicitly disabled all such cookies and instructed Defendant not to sell or share their personal information* cookie banner. *See* CAC ¶¶ 2-5, 21, 25, 31-32, 139-149.

Defendant nevertheless argues that Plaintiffs "generally" fall short in pleading the requisite "what" or "when" elements of Rule 9(b).[4] Defendant's arguments have no merit.

---

[3] Other courts have reached the same conclusion in similar cookie-banner fraud cases. *See Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *22 (N.D. Cal. Nov. 24, 2025) (quoting *Motorola,* and "finding similar allegations sufficient" to survive a 9(b) challenge); *Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *57 (N.D. Cal. Oct. 16, 2025) ("Plaintiffs proffer the who, what, when, where and how in their Opposition, citing to portions of the Complaint" in a reject-all cookies case); *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *27 (C.D. Cal. Dec. 15, 2025) ("Therefore, the FAC sufficiently pleads what alleged data is being sent to whom for Plaintiff's fraud claim.").

[4] Other than "generally" arguing that none of Plaintiffs' claims satisfy Rule 9(b)'s heightened pleading requirement, Deckers does not specifically address Plaintiffs' invasion of privacy, intrusion upon seclusion, or California Penal Code § 638.51 pen register claims. These claims do not sound in fraud, so they are not subject to heightened pleading requirements of Rule 9(b). As Judge Pitts recently concluded in a similar setting: "Rule 9(b) does not apply to plaintiffs' 'pleading as a whole.' While plaintiffs' suit is based in part on [defendant's] allegedly false promise not to enable third parties to track users, none of their claims other than their fraud claim rely 'entirely' upon that course of conduct. Instead, the other claims focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them. The heightened pleading requirements of Rule 9(b) therefore apply only to plaintiffs' common law fraud claim." *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 LX 43836, at *25 n.3 (N.D. Cal. Jan. 27, 2026). Plaintiffs' invasion of privacy, intrusion upon seclusion, or California Penal Code § 638.51 pen register claims must proceed. Even if this Court believes that these claims are required to meet Rule 9(b), they do so, as explained *infra.*

First, Defendant incorrectly asserts that "the Complaint contains no specific factual allegations about ***Plaintiffs' own visits*** to the Websites or how they personally were defrauded by Defendant." (Def.'s Mot. at p. 14.) That is simply untrue. The Complaint clearly contains such allegations, including specific allegations as to: (a) the reasons why Plaintiffs visited the Websites and what they did on the Websites (CAC ¶¶ 128-30, 139-41); (b) Plaintiffs' rejection of cookies, using the options Defendant presented to them (CAC ¶¶ 131-34, 142-45), and (c) how Defendant's Websites nevertheless actually and surreptitiously transmitted Plaintiffs' and all other users' browsing history, visit history, website interactions, user input data, demographics, interests, shopping behavior, device information, the referring URL, user identifier tags, and geolocation data of users (including Plaintiffs) to Third Parties (CAC ¶¶ 2-5, 30-121, 135-36, 146-47). Plaintiffs also plead numerous categories of data sufficient to place Defendant on notice of the particular misconduct alleged to permit Defendant to defend against the claims. *See Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017). This is precisely the information at issue (for example, whether it contained "contents" under CIPA) that is critical to Deckers' ability to defend against Plaintiffs' underlying claims. Indeed, Defendant undermines its own argument by attacking this exact issue in its brief—i.e., whether the type of information that was alleged to have been improperly shared violates CIPA. (Def.'s Mot. at p. 17.) (where Defendant argues that "Private Communications" and therefore qualifies as "content," courts have consistently held that data such as browsing history, page views, and similar information constitutes unprotected record information, and not content"). Put differently, Defendant itself demonstrates that Plaintiffs' as-pled information is sufficient to defend itself against all of Plaintiffs' claims.

Likewise, Plaintiffs satisfactorily allege the "when" of their website visits. They specifically plead which Websites they visited and the period of time in which the visits occurred. Plaintiff Ortiz pleads that he visited the Hoka website "on one or more occasions during the last four years, including in or around April or May 2025." CAC ¶ 128. Albrigo alleges she "visited the Sanuk Website, Ugg Website, and the Kookaburra Website to seek information about Defendants' products, on one or more occasions during the last four years." *Id.*, CAC ¶ 139. Nothing more is

required at the pleading stage. *See, e.g., Wiley v. Universal Music Grp., Inc*., No. 25-cv-03095-PCP, 2025 LX 594493, at *7-8 (N.D. Cal. Dec. 17, 2025) (finding pleading of website visits "on multiple occasions during the last four years" to be adequate).[5]

Deckers further argues that, without a more specific date, it cannot determine if the claims are time-barred. That argument is misplaced. Affirmative defenses, such as Defendant's limitations argument, do not provide a basis for dismissal unless the plaintiffs have pleaded themselves out of a claim by "admit[ting] all the ingredients of an impenetrable defense," *Durnford v. MusclePharm Corp*., 907 F.3d 595, 604 n.8 (9th Cir. 2018), meaning that the plaintiffs' pleaded facts demonstrate no "potential factual dispute that could affect whether the defense applies," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024). That is far from the case here. Ortiz alleges he visited the Hoka Website in April/May of 2025, and the Complaint was filed in November of 2025. That is within even the shortest limitations period. Albrigo alleges she visited multiple Websites within the last four years. This, too, is sufficient. *See, e.g., Wiley*, No. 25-cv-03095-PCP, 2025 LX 594493, at *7-8 (holding the "last four years" includes the past two years or one year, so it is entirely possible, from the face of the complaint, that plaintiff's claims are timely. Therefore, plaintiffs have adequately alleged that their claims are timely.)

Defendant's reliance on *Pemberton v. Rest. Brands Int'l, Inc.,* No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) is wholly misplaced. In *Pemberton*, the complaint specifically alleged that the plaintiff learned of the alleged conduct more than 18 months before the filing of the complaint. *Id.* at *16-17. The only question was how California's equitable tolling doctrine applied, given that the plaintiff first engaged in arbitration and then did not file his complaint for over nine months after receiving an arbitral ruling. That case bears no resemblance to the facts alleged here.

---

[5] Deckers further argues that neither Plaintiff alleges to have visited the Teva website. While true, it is unclear why Deckers thinks this matters, as Plaintiffs allege that all the Websites operated in a materially identical manner throughout the class period. (CAC ¶¶ 1, 26.) Nothing more is required as this stage. *See, e.g., Bush v. Rust-Oleum Corp*., No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507, at *6 (N.D. Cal. Jan. 4, 2021) (holding plaintiff had standing to bring claims based on products he did not purchase because he alleged that the representations were substantially similar and alleged uniform misrepresentations across product lines).

Defendant's demand for additional specificity is unpersuasive. It does not have to guess which version of which Websites' representation Plaintiffs encountered. Indeed, given that Plaintiffs allege that the "what" of Defendant's fraud are "misrepresentations by [Defendant] through the popup banner offering users the option to [disable advertising, analytical and tracking cookies reject Defendant's *sale or sharing of their personal information*], Defendant would only have to compare changes to its popup banner on the Websites to "determine what specific representations regarding cookies were made on [the website]" to defend itself. *Compare Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 *with* Def.'s Mot. at 9. But, to Plaintiffs' knowledge, Defendant has not done so. Regardless, Plaintiffs have adequately alleged "when" they visited the Websites and "what" happened. Courts in this District find those allegations sufficient for defendants to "defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022); *see also Haleon*, 2025 U.S. Dist. LEXIS 169503; *Motorola,* 2025 U.S. Dist. LEXIS 133836, at *21–22; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *22; *Walsh*, 2025 U.S. Dist. LEXIS 204652, at *57.

To the extent that Defendant argues that Plaintiffs must allege *exactly* when and what specific information of theirs was intercepted, that would essentially require any would-be plaintiff to record his network activity all the time, *expecting* Defendant to disregard his privacy elections. That would effectively preclude plaintiffs from bringing viable internet privacy claims. Moreover, it would open all Plaintiffs *who survive* a motion to dismiss to an attack on their Article III standing, as they would be *expecting* that their privacy rights would be infringed upon. *See Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 at *1 (C.D. Cal. April 4, 2025) (no Article III standing when a "tester" Plaintiff expected to be harmed by privacy violations). Accordingly, this Court should follow Judge Tigar and Judge Orrick in their well-reasoned findings that Plaintiffs have satisfied Rule 9(b)'s standard. *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *21–22; *accord Haleon*, 2025 U.S. Dist. LEXIS 169503, at *36 (per "Fed. R. Civ. 9(b), [Plaintiff's] allegations are sufficient for now.").

Plaintiffs, in fact, allege the specific information that was intercepted by Third Parties after Defendant promised it would not permit such access. For example, Plaintiffs specifically allege what

they did on the Websites—e.g., Albrigo browsed the Websites for boots and Ortiz searched for specific models and sizes of shoes in the "Men" section of the Hoka Website that he was interested in purchasing. (CAC ¶¶ 130, 141.) Ortiz also read Hoka's product descriptions for the products and read customer reviews posted about the products because he was interested in learning about their durability and comfort. (Id. ¶ 130.) Plaintiffs additionally allege what information was shared/sold with Third Parties—i.e., information about the webpages they visited on the Websites, including the URLs, titles, and keywords associated with the webpages viewed, time spent on each page, and navigation patterns; information about the frequency and total number of their visits to the Websites; data on which links, buttons, or ads on the Websites they clicked; information on the search queries the user entered into the Websites' form fields; inferences about their age, gender, and location based on browsing habits and interactions with the Websites' content; insights into their interests based on the types of content viewed, products searched for, or topics engaged with on the Websites; information about the Websites' products viewed (e.g., boots, Hoka shoes, product reviews, etc.); details about the their devices, such as the type of device (mobile, tablet, desktop), operating system, and browser type; information about the website that referred them to the Websites; details about the their browsing session, including the exact date and time of the user's session, the session duration and actions taken on any of the Websites during their session; a unique ID that is used to recognize and track a specific them across different websites over time; and general geolocation location information based on the their IP address or GPS data, if accessible, including that they were located in California. (*See, e.g., id.* ¶¶ 21, 136, 147.) Given that Defendant knows best how it configured the Websites and what browsing information is tracked, shared and profiled, this is more than enough to put it on notice regarding the plausibility of the claims.[6]

[6] Deckers finally argues that the Websites changed over time. Though not in the Complaint, Plaintiffs are aware that Deckers claims that it fixed the Websites sometime after it was placed on notice of its unlawful conduct by Plaintiffs. This too cannot be determined in the pleading context. However, if/when Deckers is willing to provide Plaintiffs with this information—i.e., when and how each Website was fixed—Plaintiffs will certainly limit their certification motion accordingly.

Finally, Deckers devotes a separate section of its motion to arguing that Plaintiffs have not adequately plead their fraud claim because they do not allege that Deckers "made any statement with knowledge of its falsity at the time that Deckers made any such statement." (Def.'s Mot. at p. 15.) That assertion is incorrect, as the Complaint expressly alleges Defendant's knowledge and concealment. Indeed, it is hard to miss in the Complaint. (*See, e.g.*, CAC ¶ 214) (alleging that Defendant exclusively knew, and actively concealed, that the representations they made regarding rejecting cookies and the sale and sharing of personal information were false). Plaintiffs further allege that Defendant knew, or should have known, how the Websites functioned, including the Third Party's resources it installed on the Websites and the third-party cookies in use on the Websites, through testing the Websites, evaluating the Websites' performance metrics by means of its accounts with the Third Parties, or otherwise, and knew, or should have known, that the Websites' programming allowed the third-party cookies to be placed on users'—including Plaintiffs'—browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to disable or reject all non-essential cookies, which Defendant promised its users they could do. (Id.) Plaintiffs further allege that Defendant voluntarily incorporated the third-party tracking devices into the Websites (id. ¶ 17) and that Defendant had complete control over its actions—i.e., activating third-party tracking when it promised not to (id. ¶ 24-25, 30, 219). Nothing more is required at this stage.

**B. Plaintiffs Sufficiently Plead their Wiretapping Claims under CIPA § 631(a).**

The fourth clause of Section 631(a) makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities."[7] *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024)

[7] Defendant argues that the Complaint is unclear as to which prong of CIPA § 631(a) is at issue. That contention is misplaced. The Complaint invokes the statute's fourth prong—the aiding-and-abetting provision—which Defendant itself substantively addresses. Defendant further argues that Section 631(a) does not apply to online conduct, but Plaintiffs do not invoke on the statute's first clause. Even if they did, Defendant's argument rests on dated and minority authority. Courts have consistently

(cleaned up); *see* CAC ¶¶ 16, 114–133, 178–179. This clause applies to internet communications. *Id*. (*citing Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024)); *Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to internet communications.").

Plaintiffs allege that Defendant integrated its Websites with third-party code that enables the Third Parties to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." (CAC ¶¶ 2, 31.) The Complaint further alleges that these cookies transmit communications "in real time." (*See, e.g.*, *id*. ¶¶ 3-4, 18, 21, 24, 30-33, 44, 66, 92, 96, 109, 112, 135, 146.) For example, Plaintiffs allege that "the third-party cookies . . . surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant." (Id. ¶ 21.) Plaintiffs also include screenshots showing network traffic that occurs *after* a user rejects cookies using the Websites' cookie banner and proceeds to browse the Websites. (Id. ¶¶ 31, 32, 44-120.) At the pleading stage, this is sufficient. Defendant's arguments to the contrary—that Plaintiffs do not establish that Third Parties tapped the "contents" of Plaintiffs' communications "in transit"—misreads the complaint.

**1. Plaintiffs allege that third parties intercepted the contents of communications.**

The parties agree that Section 631(a) prohibits the interception of the "contents" of communications. Contents "refer[] to the intended message conveyed by the communication" and does not include record information about message characteristics generated in the course of transmission. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v.*

---

rejected the contention that § 631(a) is inapplicable to internet communications. *See, e.g., Javie*r, 2022 U.S. App. LEXIS 14951, at 1 (holding "Section 631(a) applies to Internet communications" despite being written in terms of wiretapping.); *see also Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MSB, 2024 U.S. Dist. LEXIS 7873, at *21 (S.D. Cal. Jan. 12, 2024) (stating "Reading the first clause of Section 631 to apply only to communications through a wire ignores the fact that a statute may be read to apply to new technologies 'where such a reading would not conflict with the statutory scheme.'") (citation omitted.)

*Lululemon*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (§ 631(a) protects "user-generated material" but not "routine identifiers").

Here, Plaintiffs allege interception of "contents," including user input data such as "search queries, the user's name, age, gender, email address, location, and/or payment information." (CAC ¶¶ 21, 136, 147) (alleging interception of, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data"). Plaintiffs also allege interception of the "specific web pages viewed," including through full-string URLs that reflect specific webpages and user inputs. *See, e.g., Gilligan v. Experian Data Corp*., No. 25-cv-02873-RFL, 2026 LX 75435, at *7 (N.D. Cal. Jan. 6, 2026); *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234, at *9 (N.D. Cal. Oct. 16, 2025) (same). Plaintiffs additionally allege that Defendant enabled the creation of user profiles reflecting their personal information. (CAC ¶¶ 21, 65, 89, 110, 112. Defendant's own disclosures acknowledge that "Targeted Advertising and social media cookies are capable of tracking your browser across other sites and building up a profile of your interests." (CAC ¶ 25.) This Court has found lesser allegations sufficient. *E.g. Deivaprakash v. Conde Nast Digit*., No. 25-cv-04021-RFL, 2025 LX 431293, at *4 (N.D. Cal. Sep. 30, 2025) (denying reconsideration where plaintiff alleged that internet trackers allowed third parties to generate profiles reflecting his personal information).

Defendant argues that Plaintiffs allege only disclosure of record information rather than contents. That argument ignores the Complaint's allegations, including Plaintiffs' repeated allegations that Third Parties intercepted user input data. Nor does it comport with the many cases holding that user input data—including search terms and URLs containing search terms—constitutes "contents" under CIPA. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *In re Zynga Priv. Litig.*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *11 (URLs which reveal queries reflect "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries"

constitute content); *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

**2. Plaintiffs allege that the third parties attempted to learn the contents of communications while in transit.**

Defendant next argues that Plaintiffs fail to allege that third parties "attempted to ***learn***" their communications "while" the communication was in transit. That argument is incorrect and, in any event, overstates what must be pled at this stage.

As an initial matter, some federal courts have questioned whether a plaintiff must plead "while" in-transit interception in the manner that Defendant asserts, given the California Supreme Court's decision in *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985): "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp*., No. CV 24-2603-GW-SSCx, 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Penal Code § 631(a) and *Ribas*, 38 Cal. 3d at 359). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' ***or*** was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701, at *25 (emphasis added) ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

In any event, Plaintiffs plausibly allege contemporaneous interception "with the sending or receipt of the message." *See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023). Allegations of real-time transmission are sufficient at the pleading stage *See, e.g.*, *Jackson v. LinkedIn Corp*., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024). Plaintiffs also provide specific examples of real time transmissions. CAC ¶¶ 3-4, 18, 21, 24, 30-33, 44, 66, 92, 96, 109, 112, 135, 146.

Further, courts also find simultaneous duplication and interception of communications sufficient to meet CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza*, 2024 U.S. Dist. LEXIS 24429, at *3. Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela*, 674 F. Supp. 3d at 759; *see also Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have sufficiently alleged that their communications were intercepted, tapped, read, and processed "in transit" to sustain their CIPA claims. *St. Aubin*, U.S. Dist. LEXIS 179067, at *17.

Defendant urges this Court to apply cases involving disparate facts, including *Rosenow v. Facebook, Inc.,* No. 19-cv-1297-WQH-MDD, 2020 U.S. Dist. LEXIS 73513, at *22 (S.D. Cal. Apr. 27, 2020) and *In re Vizio, Inc., Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). But the complaints in those cases did not include *any* factual allegations supporting an inference that the plaintiffs' communications were intercepted in transit. Here, by contrast, Plaintiffs support their allegations of real time, during transmission interception, with specific details and examples, which is sufficient at this stage. By way of example, Plaintiffs have alleged that the Third Parties "instantaneously collect and analyze" user data "in real time," providing specific screenshots of the HTTP network traffic to demonstrate exactly how and when the transmission occurred. (CAC ¶¶ 3-4, 18, 21, 24, 30-33, 44, 66, 92, 96, 109, 112, 135, 146.)

**C. Plaintiffs Sufficiently Plead their Claims for Unjust Enrichment (Count VI).**

Contrary to Defendant's argument, the Ninth Circuit permits independent claims for unjust enrichment. *See Bruton v. Gerber Prod. Co*., 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv. Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting an

independent unjust enrichment claim alongside distinct breach of contract and fraud claims). To plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs allege that Defendant profited from the use of their Private Communications. (CAC ¶¶ 122-127, 224-232) (describing ways in which Defendant benefited from the use of cookies).

As the Ninth Circuit recognized, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook Inc. Internet Tracking Litig*., 956 F.3d at 596 (internal citation omitted). "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id*. ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value"). These allegations are sufficient at the pleading stage. *See Shah v. Capital One Fin. Corp.*, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

Deckers additionally argues that Plaintiffs' unjust enrichment claim fails because they do not allege a lack an adequate remedy at law. This argument is mistaken. Plaintiffs expressly "plead this claim separately, as well as in the alternative, to their other claims, as without such claims Plaintiffs would have no adequate legal remedy."[8] (CAC ¶ 232.)

**D. Defendant's Motion to Strike Must Be Denied.**

[8] Plaintiffs acknowledge this Court's decision, in *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234, at *10 (N.D. Cal. Oct. 16, 2025), dismissing an unjust enrichment claims on where plaintiffs failed to explain how the money they seek through restitution is any different than the money they seek as damages. While Plaintiffs include argument to preserve the issue., they do not oppose dismissal without prejudice of their unjust enrichment claim.

Deckers finally asks the Court to strike, as "immaterial" and "impertinent," all allegations related to the Sanuk Website. It argues that the Sanuk website has not been under its control since August 15, 2024, and therefore contends, that Plaintiffs' claims, which are subject to a one-year statute of limitations, are time-barred because the Complaint was filed on November 7, 2025. Alternatively, Defendant argues that any viable claims are against Lole Brands, which later acquired the Sanuk brand. These arguments are mistaken as a matter of law and fact.

Rule 12(f) permits striking only an "insufficient defense[s] or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored. *See Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 LX 354693, at *16 (N.D. Cal. Aug. 4, 2025), *citing Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011). A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation. *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Statements that do not pertain to, and are not necessary to resolve, the issues in question are impertinent. *Fantasy, Inc.*, 984 F.2d at 1527. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion to strike. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

As explained above, Defendant's contention that the sale of the Sanuk website renders the CIPA claims untimely it misdirected, as Defendant's statute of limitations defense cannot be established on the face of the Complaint. *See Durnford*, 907 F.3d at 604 n.8; *Rabin*, 725 F. Supp. 3d at 1031. The CIPA limitations period does not necessarily run from when the CIPA violation occurred. Rather, it runs from when it was discovered.[9] Here, that was within a year of the filing of

[9] As set forth by Judge Orrick in *Haleon* decision, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *26 (N.D. Cal. Aug. 29, 2025) *citing Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (holding that the delayed discovery doctrine applied because "[w]hile

the Complaint. The CIPA claims against Deckers arising from the Sanuk Website during its ownership are timely on the face of the Complaint and therefore are neither impertinent or immaterial.[10] *See, e.g., Wiley*, No. 25-cv-03095-PCP, 2025 LX 594493, at *7-8 (holding that "plaintiff alleges visits to websites to browse information about music and related products on multiple occasions during the last four years," and finding that the "last four years" includes the past two years or one year, so it is entirely possible, from the face of the complaint, that plaintiff's claims are timely. Therefore, plaintiffs have adequately alleged that their claims are timely.)

In any event, even if Deckers were to ultimately to prevail on its statute-of-limitations defense (despite California's discovery rule), Plaintiffs assert additional claims with longer limitations periods. As such, the Sanuk-related pleadings still have bearing on the case as to Plaintiffs' non-CIPA claims and are thereby neither "immaterial" or "impertinent."

**E. Plaintiffs Request Leave to Amend If Necessary.**

"[L]eave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

---

defendants argue that plaintiff cannot invoke the discovery rule unless she alleges the specific 'time and manner' of her discovery, that argument is not persuasive given the type of case this is - based on defendants' use of highly technical proprietary software - and given plaintiff's clear statement that 'the earliest' plaintiff could have known of her injury was shortly before filing.") Here, Plaintiff Albrigo presents similar allegations. CAC ¶ 149 (alleging Plaintiff "does not have the technical knowledge necessary to test whether the Websites honor users' requests to reject all non-essential cookies and tracking technologies."); *see also Mercury Ins. Servs., LLC v. Curley*, No. 8:24-cv-01336-JVS-AS, 2025 LX 242609, at *34 (C.D. Cal. Mar. 28, 2025) (holding "California courts apply the delayed discovery rule to CIPA claims."), *citing Montalti v. Catanzariti*, 191 Cal.App.3d 96, 100 (1987).

[10] As to Deckers' additional argument that Plaintiffs should also direct their claims to Lole Brands for the post-acquisition of the Sanul Website, it may ultimately be correct, but as pled it would be in addition to (not instead of) Deckers. In any event, this matter is well outside the pleadings and is best addressed during the course of the litigation through meeting and conferring.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and motion strike should be denied in full.

Dated: February 23, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*