TRAVIS P. BRENNAN, State Bar No. 238119
tbrennan@stradlinglaw.com
SEAN THOMAS LOBB, State Bar No. 324213
stlobb@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Fax: (949) 725-4100

Attorneys for Defendant
DECKERS OUTDOOR CORP.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ORTIZ and LAURA WILLIS ALBRIGO, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DECKERS OUTDOOR CORP.,<br><br>Defendant. | Case No. 3:25-cv-09631-RFL<br>Assigned to Hon. Rita F. Lin<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STAY**<br><br>[*Filed concurrently with Declaration of Travis P. Brennan; Request for Judicial Notice*]<br><br>Hearing:<br>Date: August 4, 2026<br>Time: 10:00 a.m.<br>Location: Phillip Burton Federal Building<br>Courtroom 4 - 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Complaint Filed: November 7, 2025<br>FAC Filed: May 26, 2026<br>Trial Date: N/A |

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 4, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of this Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable Rita F. Lin, attorneys for Defendant Deckers Outdoor Corp. ("Deckers") move the Court for an order: (1) dismissing with prejudice Plaintiffs Jose Ortiz and Laura Willis Albrigo's First Amended Class Action Complaint (Dkt. 31) and (2) staying discovery pending resolution of Deckers' motion to dismiss (the "Motion").

Deckers brings this Motion under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs fail to allege sufficient facts to plead: (1) invasion of privacy, (2) intrusion upon seclusion, (3) wiretapping in violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a), (4) use of a pen register in violation of CIPA, California Penal Code § 638.51, (5) fraud, and (6) unjust enrichment.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Travis P. Brennan; Request for Judicial Notice; all papers and pleadings on file in this action; such other evidence and argument as may be presented at or before any hearing on this Motion; and all other matters of which the Court may take judicial notice.

DATED: June 23, 2026

STRADLING YOCCA CARLSON & RAUTH LLP

By: */s/ Travis P. Brennan*
Travis P. Brennan
Sean Thomas Lobb

Attorneys for Defendant
DECKERS OUTDOOR CORP.

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ..... 8

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 9

A. Deckers Lawfully Uses Third-Party Cookies And Sufficiently Notifies Visitors About Its Privacy Practices. ..... 9

B. Plaintiffs' Repeated, Conclusory, And Vague Allegations Regarding The Websites. ..... 10

C. The Court Grants Deckers' Original Motion to Dismiss In Part. ..... 11

III. LEGAL STANDARD ..... 12

IV. ARGUMENT ..... 13

A. Plaintiffs Still Fail To State A Claim For Fraud. ..... 13

1. The Fraud Claim Still Fails Because The FAC Does Not Plausibly Allege That Deckers Knew Its Representations Were False. ..... 13

2. The Fraud Claim Also Still Fails For Lack Of Particularity. ..... 15

B. The FAC Again Fails To State A Claim For Wiretapping Under CIPA Because Plaintiffs Have Not Plausibly Alleged In-Transit Interception. ..... 17

C. The FAC Still Fails To State A Claim For Unjust Enrichment. ..... 20

D. Plaintiffs' Privacy Claims Do Not Meet The High Bar Needed In This District. ..... 21

1. Plaintiffs Had No Reasonable Expectation of Privacy. ..... 21

2. The FAC Does Not, And Cannot, Allege A Highly Offensive Intrusion. ..... 21

E. The Pen Register Claim Fails Because Plaintiffs Do Not Allege They Ever Communicated With The Websites. ..... 23

F. A Stay Of Discovery Pending Resolution Of This Motion Would Promote Judicial Economy. ..... 24

V. CONCLUSION ..... 26

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arcell v. Google LLC*,
2024 U.S. Dist. LEXIS 45530 (N.D. Cal. Feb. 5, 2024) (Lin, J.) .......... 25

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 20

*Ayora v. Inspire Brands, Inc.*,
No. 25-cv-03645, 2026 U.S. Dist. LEXIS 126682 (N.D. Cal. June 8, 2026) .......... 19

*Belluomini v. CitiGroup, Inc.*,
2013 U.S. Dist. LEXIS 149142, 2013 WL 5645168 (N.D. Cal. Oct. 15, 2013) .......... 23

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014), aff'd, 649 F. App'x 424 .......... 16

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) (Pitts, J.) .......... 20

*Cellwitch, Inc. v. Tile, Inc.*,
No. 4:19-CV-01315, 2019 U.S. Dist. LEXIS 182943 (N.D. Cal. Oct. 22, 2019) (White, J.) .......... 25

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) (Orrick, J.) .......... 15

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) (Pitts, J.) .......... 24

*Deanco Healthcare, LLC v. Becerra*,
365 F. Supp. 3d 1029 (C.D. Cal. 2019) .......... 12

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 22

*Garcia v. Blackhawk Network, Inc.*,
2026 U.S. Dist. LEXIS 75154 (C.D. Cal. Apr. 1, 2026) .......... 23

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907 (N.D. Cal. Jan. 6, 2026) (Lin, J.) .......... 20

*Hall v. Tilton*,
No. C 07-3233 RMW (PR), 2010 U.S. Dist. LEXIS 11162 (N.D. Cal. Feb. 8, 2010) ........ 25

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 21, 22

*Herrejon v. Ocwen Loan Servicing, LLC*,
980 F. Supp. 2d 1186 (E.D. Cal. 2013) ........ 13, 14

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) (Whyte, J.) ........ 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 22

*Kendall v. Visa USA, Inc.*,
518 F.3d 1042 (9th Cir. 2008) ........ 13

*Kiini LLC v. Victoria's Secret Stores Brand Mgmt.*,
CV 15-8433 FMO (GJSx), 2016 U.S. Dist. LEXIS 187632, at *4 (C.D. Cal. Sep. 9, 2016) ........ 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 17

*Lau v. Gen. Digit. Inc.*,
No. 22-cv-08981-RFL, 2024 U.S. Dist. LEXIS 81310 (N.D. Cal. Apr. 3, 2024) (Lin, J.) ........ 17

*Little v. City of Seattle*,
863 F.2d 681 (9th Cir. 1988) ........ 25

*Lloyd v. Facebook, Inc.*,
2024 U.S. App. LEXIS 16527 (9th Cir. Jul. 8, 2024) ........ 21

*Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*,
500 F. Supp. 3d 1075 (C.D. Cal. 2020) ........ 12

*Marden v. LMND Med. Grp., Inc.*,
No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 132292 (N.D. Cal. July 3, 2024) ........ 20

*In re Meta Android Priv. Litig.*,
2026 U.S. Dist. LEXIS 104066, _ F.Supp.3d _, 2026 WL 1279416 (N.D. Cal. May 11, 2026) ........ 21

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ........ 13, 17

*In re Nexus 6p Prods. Liab. Litig.*,
No. 17-cv-02185-BLF, 2017 U.S. Dist. LEXIS 132698 (N.D. Cal. Aug. 18, 2017) ........ 25

*Ortiz v. Foris Dax, Inc.*,
No. 25-cv-08950, 2026 U.S. Dist. LEXIS 113330 (N.D. Cal. May 21, 2026) (Chen, J.) ........ 17, 22, 23

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
220 F.R.D. 349 (N.D. Cal. 2003) ........ 26

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) (Rogers, J.) ........ 15, 17

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022) (Seeborg, C.J.) ........ 18

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........ 20

*Rosenow v. Facebook, Inc.*,
No. 19-cv-1297-WQH-MDD, 2020 U.S. Dist. LEXIS 73513 (S.D. Cal. Apr. 27, 2020) ........ 18

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ........ 25

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) (Pitts, J.) ........ 17, 24

*Tsering v. Meta Platforms, Inc.*,
2026 U.S. Dist. LEXIS 5762, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) (Lin, J.) ........ 23

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 19

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ........ 19

*Yamasaki v. Zicam LLC*,
No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 157156 (N.D. Cal. Aug. 19, 2021) (Gilliam, J.) ........ 25

**California Cases**

*Hooked Media Grp. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ....................20

**California Statutes**

Cal. Civ. Code
§ 1798.100 et seq. ....................10

Cal. Penal Code
§§ 630-638 ....................10, 17, 19
§ 638.50(b) ....................24

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) .................... *passim*

Fed. R. Civ. P. Rule 12(b)(6) ....................12, 25

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

After the Court granted Deckers' motion to dismiss the original complaint in part, Plaintiffs Jose Ortiz and Laura Willis Albrigo (collectively "Plaintiffs") elected to file their First Amended Complaint (Dkt. 31, "FAC"). The FAC, however, does not cure the serial deficiencies identified in Deckers' original motion to dismiss and the Court's May 6, 2026 order (Dkt. 30). This dispute arises from Plaintiffs' allegations that five retail websites allegedly operated by Deckers (HOKA.com, UGG.com, koolaburra.com, teva.com, and sanuk.com) (collectively "Websites") transmitted unwanted cookies, amounting to "egregious privacy violations." As in the original complaint, Plaintiffs assert the same six claims against Deckers for invasion of privacy, intrusion upon seclusion, wiretapping, use of pen register, fraud, and unjust enrichment, but those claims fail because the FAC depends upon the same deficient allegations with only the unremarkable addition of conclusory allegations that cannot support any of the claims.

- First, the fraud claim still fails because Plaintiffs' allegations still do not plausibly allege actual knowledge of falsity—or fraud in general—with the particularity Rule 9(b) demands. Emblematic of those deficiencies, as identified in the original motion to dismiss, ***Plaintiffs do not even allege that they ever visited one of the Websites, the Teva website.***

- Second, as to the wiretapping claim, the Court previously dismissed it because Plaintiffs did not plausibly allege that communications were intercepted "while being sent, received, or while they were in transit." (Dkt. 30 at 4.) The FAC now adds the legal conclusion that third parties "read" or "learned" contents "while communications were in transit," but the underlying factual allegations remain unchanged: users' browsers made separate GET and POST requests directly to third-party domains. Plaintiffs now parroting the statutory language does not cure this factual deficiency and contradiction.

- Third, the unjust enrichment claim fails for the same reasons identified previously in the Court's order and Deckers' original motion to dismiss. Plaintiffs made zero revisions to the prior claim that was dismissed.

- Fourth, the invasion of privacy and intrusion upon seclusion claims fail because the FAC lacks sufficient allegations to overcome the high bar in this District to plead privacy claims.

- Fifth, the use of a pen register claim fails because the FAC does not allege Plaintiffs communicated with the Websites.

- Lastly, the Court should stay discovery in this action pending resolution of this Motion. A limited stay of discovery will promote judicial economy and avoid waste of the Parties' resources without materially prejudicing Plaintiffs.

For these reasons and as more fully explained below, Deckers respectfully requests that the Court dismiss the FAC with prejudice and, in the interim, stay this action pending resolution of this pending motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. <u>Deckers Lawfully Uses Third-Party Cookies And Sufficiently Notifies Visitors About Its Privacy Practices.</u>

This case is the latest in a series of ***numerous lawsuits*** filed by the same firm whose clients test the functionality of companies' voluntary "cookie banners" and then assert copy-and-paste allegations claiming the transmission of any allegedly unwanted cookies amounts to "outright lies" and "egregious privacy violations." Deckers designs and distributes footwear and apparel, including under the brands UGG, HOKA, Teva, and (previously) Koolaburra. UGG, HOKA, and Teva each has its own website (collectively "Deckers' Websites"); Koolaburra closed its website on March 31, 2025. (*See* FAC ¶ 1, n.1.) Precise features of each Website vary, but generally they allow users to view and purchase product.

Like virtually all companies with ecommerce websites, Deckers embed first-party and third-party code on Deckers' Websites for analytics, website functionality, security, advertising, and marketing purposes. (*Id.* ¶ 25.) This code may deploy additional small text files of code, referred to as "cookies," that website servers may cause to be placed on an Internet user's browser. Cookies can perform a variety of functions, such as helping websites operate effectively and assisting website owners to personalize the user's experience. Internet browsers (*i.e.*, Chrome, Edge, Safari) and certain privacy focused add-ons (like uBlock Origin or "Incognito Mode") contain settings that users can set to automatically accept all or only certain cookies, and also to automatically delete the browser's cookie cache at the end of the browsing session, daily, weekly, monthly (or whenever the system is rebooted), or on-demand by the user. And cookies, including those at issue here, have an expiration date, which can vary from as soon as the browsing session ends to several years after the visit.

Starting in August 2023, ***although not required by law***, Deckers voluntarily began the roll-out of a cookie management tool—including a "cookie banner" pop-up notification—to

promote transparency and offer users a simple, low-burden way to input their preferences regarding certain third-party technologies used on Deckers' Websites. The FAC contains undated screenshots of the cookie banners on the Websites, and Plaintiffs do not allege they took these screenshots during their visit; instead, they were taken at an unknown date and time, by an unidentified user. (FAC ¶¶ 27-28.) As depicted, Deckers' cookie banners provide a conspicuous link to each respective "Cookie Policy," which in turn provide a link to Deckers' Privacy Policy.[1] (*Id.* ¶ 27.) The linked Cookie Policy and Privacy Policy informs visitors that Deckers uses cookies on the Websites, informs them of the categories of information Deckers may collect, how it is collected, how it may be shared, and how it may be used.[2] (*Id.* ¶ 25.) Nowhere on the cookie banners or the Privacy Policies does Deckers state that it will not place (or has not already placed) cookies on a visitor's device, or that it will delete any cookies already placed on a visitor's device. (*Id.* ¶¶ 27-28.) And nowhere on the cookie banners does Deckers state that a visitor can decline all categories of cookies, such as essential cookies. (*Id.*)

### B. <u>Plaintiffs' Repeated, Conclusory, And Vague Allegations Regarding The Websites.</u>

The FAC alleges claims for: (1) invasion of privacy, (2) intrusion upon seclusion, (3) wiretapping in violation of CIPA, California Penal Code § 631(a), (4) use of a pen register in violation of CIPA, California Penal Code § 638.51, (5) fraud, and (6) unjust enrichment. (FAC at 1.) Plaintiff Laura Willis Albrigo ("Albrigo") still alleges she visited Koolaburra websites at some point "during the last four years," and she alleges that she visited the Sanuk and UGG websites "approximately every other month for the past four years, including in or about September 2025." (FAC ¶ 153-155.) Notably: (1) a cookie banner did not even exist on those websites for nearly half of that period, until August 2023; (2) Deckers sold the Sanuk brand on

---

[1] As of September 2025, Deckers' cookie banners also provide a conspicuous link to each respective "Privacy Policy." *See, e.g.,* www.teva.com.

[2] The California Consumer Privacy Act ("CCPA") does not prohibit companies from placing third-party technology on their websites or prohibit the placement of a cookie by the third-party technology. Rather, California law only provides that a company must give consumers the ability to opt out of the collection of data by that third-party technology if it is "sold" or used for the purpose of cross-context behavioral advertising, as defined by the CCPA.

August 15, 2024 and has not owned or operated it since; and (3) the Koolaburra website closed on March 31, 2025. (RJN at Exs. A, B; FAC ¶ 1, n.1.)

Albrigo does not provide screenshots of anything she actually saw during her visits and only alleges an interaction with the cookie banners on the Sanuk, UGG, and Koolaburra websites. (FAC ¶¶ 153-165.) Albrigo does not identify the device(s) or browser(s) she used to visit the three websites or state whether her cookie settings were set to automatically accept some or all cookies and/or automatically delete cookies at some discrete point in time. Nor does she allege that she clicked and viewed the "Cookie Policy" conspicuously linked on each Website cookie banner. Other than clicking the cookie banners, Albrigo does not describe with specificity any of her actions taken on any of the three websites. (*Id.*) She does not describe what pages she viewed, how long she spent browsing, if she made a purchase or entered any content such as her name, email, or other information into any field, used a search bar, or sent any messages or communications through any Website. (*Id.*) She does not allege what cookies were allegedly placed or sent after she made her cookie preferences on the three websites or allege what data was collected by which cookie, and she does not allege that she has suffered any harm whatsoever from any alleged misrepresentation, other than to say that she would not have visited the free websites or "would have interacted with the Websites differently." (*Id.* at ¶ 164.)

Similarly, Plaintiff Jose Ortiz ("Ortiz") alleges that he visited the HOKA website "on one or more occasions during the last four years, including in or around May 2025." (FAC ¶ 142.) Again, a cookie banner did not exist on the HOKA website for nearly half of that period. Ortiz does not include screenshots of the cookie banners he encountered during those visits and only alleges an interaction with the HOKA banner. (*Id.* ¶¶ 142-152.) The remainder of his allegations merely echo those of Albrigo and fail to provide comparable details regarding user content he may have entered, his device and browser settings, browsing sessions, cookies, or alleged injury. (*Id.*) **<u>And strikingly, neither Plaintiff alleges to have ever even visited the Teva website, despite this issue being emphasized in Deckers' original motion to dismiss</u>**.

### C. The Court Grants Deckers' Original Motion to Dismiss In Part.

On November 7, 2025, Plaintiffs filed their original complaint. (Dkt. 1.) On February 9,

2026, Deckers moved to dismiss all claims in the original complaint. (Dkt. 18.) On May 6, 2026, the Court granted Deckers original motion to dismiss in part. (Dkt. 30.) The Court dismissed the fraud, wiretapping, and unjust enrichment claims with leave to amend. (*Id.* at 5.)

On the fraud claim, the Court held that Plaintiffs failed to plausibly allege with particularity that Deckers knew its representations were false. The Court explained that Deckers "did not itself develop the third-party resources, so even if Deckers incorporated them into its websites voluntarily, that does not suggest that Deckers understood how they functioned." (*Id.* at 3.) The Court further held that "Deckers' knowledge of how its own websites worked does not bridge this gap." (*Id.*) The Court also dismissed the fraud claim because it was not pled with the requisite particularity. (*Id.*) On the wiretapping claim, the Court found Plaintiffs did not plausibly allege interception "in transit." The Court explained that Plaintiffs' own allegations indicated that "users' browsers sent information directly to third parties after the users had already received information from Deckers, not that third parties intercepted communications between users and Deckers in transit." (*Id.* at 4.) On the unjust enrichment claim, the Court noted Plaintiffs did not oppose dismissal without prejudice and held the original complaint's allegation that Plaintiffs "would have no adequate legal remedy" was conclusory. (*Id.* at 5.)

Plaintiffs filed the FAC on May 26, 2026 (Dkt. 31), retaining all six original causes of action. Deckers now again moves to dismiss all claims with prejudice.

## III. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts to support a cognizable legal theory. *Deanco Healthcare, LLC v. Becerra*, 365 F. Supp. 3d 1029, 1034-35 (C.D. Cal. 2019). A plausible claim requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Kiini LLC v. Victoria's Secret Stores Brand Mgmt.*, CV 15-8433 FMO (GJSx), 2016 U.S. Dist. LEXIS 187632, at *4 (C.D. Cal. Sep. 9, 2016). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 500 F. Supp. 3d 1075, 1077 (C.D. Cal. 2020). Dismissal with

prejudice is appropriate where it is clear that the complaint could not be saved by amendment. *See Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

## IV. ARGUMENT

### A. Plaintiffs Still Fail To State A Claim For Fraud.

#### 1. The Fraud Claim Still Fails Because The FAC Does Not Plausibly Allege That Deckers Knew Its Representations Were False.

To state a claim for common law fraud, a plaintiff must allege with specificity: (1) a misrepresentation, (2) **knowledge of falsity**, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1202 (E.D. Cal. 2013). Under Federal Rule of Civil Procedure 9(b), each element must be pled with particularity, giving "defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

This Court dismissed the original fraud claim squarely on the knowledge-of-falsity element, holding that Plaintiffs' allegations were "insufficient to support a plausible inference that Deckers understood how the third-party resources operate." (Dkt. 30 at 3.) The Court explained in detail:

> Deckers did not itself develop the third-party resources, so **even if Deckers incorporated them into its websites voluntarily, that does not suggest that Deckers understood how they functioned**. Deckers' knowledge of how its own websites worked does not bridge this gap. Therefore, **without more, the allegations in the complaint do not support a plausible inference that Deckers knew that user data would be collected and transmitted to third parties** regardless of whether users opted out of that collection and transmission, and accordingly do not support a plausible inference that Deckers **knew that its representations regarding whether users could opt out were false**.

(Dkt. 30 at 3) (emphasis added). The FAC attempts to cure this deficiency with a series of new conclusory allegations, but none cross the line from remote possibility to plausibility. The FAC alleges, largely "on information and belief," that:

- Deckers "affirmatively chose to deploy" a cookie consent banner and "undertook responsibility for ensuring" it accurately communicated and effectuated choices (FAC ¶ 225-26);

- Deckers "and/or its agents configured and managed which technologies loaded" and "transmitted data before and after a user disabled the third party cookies " through consent management settings/platforms, tag-management rules, and implementation choices (*id.* ¶ 227);
- "On information and belief Defendant operated, controlled, configured, approved, or maintained settings that permitted tracking" after users rejected cookies (*id.* ¶ 227);
- "Industry documentation" explains that website operators "must affirmatively configure consent settings and tag behavior to prevent tracking technologies from firing after users reject cookies" (*id.* ¶ 228); and
- "On information and belief Defendant received, reviewed, or had access to such implementation guidance" and could "audit, test, configure, disable, or modify" the cookie consent banner and tracking technologies (*id.*).

These new allegations fail for multiple reasons. First, the FAC's core theory— *i.e.,* that Deckers "could have" tested, "had access to" guidance, or "could" audit the banner—is a "should have known" theory. The Court already held that theory insufficient. (Dkt. 30 at 3.) An allegation that information was "available" to Deckers or that Deckers "could" audit is not an allegation that anyone at Deckers actually reviewed that information and learned, before making the representation, that it was false. Rule 9(b) requires particularized allegations of actual knowledge, not constructive knowledge based on what a defendant hypothetically could have discovered. *See Herrejon*, 980 F. Supp. 2d at 1202 (holding that fraud requires knowledge of falsity at time of statement).

Second, the FAC's new allegations are pled almost entirely "on information and belief" without disclosing the factual basis for that belief. While information-and-belief pleading is permissible in limited circumstances, it does not excuse compliance with Rule 9(b)'s particularity requirement—especially where, as here, the Court has already identified the precise factual gap that needs filling. The FAC does not identify any specific person at Deckers who knew the opt-out representations were false, when that person gained such knowledge, what specific document, dashboard, or communication conveyed the falsity, or what specific information showed that a particular user's opt-out was not honored.

Third, the FAC lumps together "Defendant and/or its agents" without distinguishing what Deckers itself knew from what a third-party vendor may have known. (*See, e.g.,* FAC ¶ 227.) This conflation is precisely the problem: Deckers deployed third-party resources developed by

others, and as the Court explained, that ***voluntary integration does not support an inference that "Deckers understood how the third-party resources operate***." (Dkt. 30 at 3.) Allegations about what unnamed "agents" configured or managed do not cure the gap between Deckers' voluntary use of third-party tools and Deckers' actual knowledge that those tools continued to transmit data after cookie opt-out.

Lastly, the allegation that "industry documentation" explains configuration requirements (FAC ¶ 228) does not allege that Deckers read that documentation, understood it to mean data was being transmitted despite cookie opt-out, and then made its representations anyway. The FAC's actual allegation that "on information and belief Defendant received, reviewed, or had access to such implementation guidance" is triply hedged: Deckers either received, or reviewed, or merely had access to generic guidance of unspecified content. This is not the particularized allegation of knowledge required. *See, e.g.*, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (Orrick, J.) (holding that Rule 9(b)'s heightened pleading standard requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged").

Accordingly, the FAC's fraud allegations amount to this: Deckers used third-party tools, could have tested them, had access to unspecified information, and therefore must have known its representations were false. This is precisely the inferential leap the Court already rejected. The FAC provides no new particularized facts—only new conclusory characterizations of the same underlying conduct. The fraud claim must again be dismissed.

2. The Fraud Claim Also Still Fails For Lack Of Particularity.

Independent of the knowledge-of-falsity deficiency, the fraud claim continues to fail the basic particularity requirements of Rule 9(b). Rule 9(b) "requires particularized facts showing how each named Plaintiff personally encountered and relied upon the alleged misrepresentations." *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (Rogers, J.) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of her own experience" reviewing or relying on misrepresentations).

The Court previously dismissed Albrigo's fraud claim for the additional reason that she failed to "allege with specificity when she visited the Sanuk, UGG, and Koolaburra websites," holding that such generality prevents "Deckers from determining 'what specific representations regarding cookies were made on [its] websites on the specific dates that [Albrigo] visited those websites or determin[ing] how the websites were using any cookies placed on users' devices on those specific dates.'" (Dkt. 30 at 3 (quoting *Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 WL 3654085, at *10 (N.D. Cal. Dec. 17, 2025).)

The FAC's allegations remain deficient. As an initial matter, ***neither Plaintiff alleges to have ever visited the Teva website***. Deckers simply cannot determine what specific representations regarding cookies were made on the Teva website on the specific dates that Plaintiffs visited that website when neither Plaintiff alleges to have ever visited the website at any point in time.

Further, while Albrigo now identifies "in or about September 2025" for her visits to the Sanuk and UGG websites, she still alleges visiting the Koolaburra website merely "on one or more occasions during the last four years" (FAC ¶ 155)—the same exact vague formulation the Court already found insufficient. (Dkt. 30 at 3) ("Albrigo alleges simply that she visited the websites "on one or more occasions during the last four years"). Moreover, for the Sanuk and UGG websites, Albrigo only vaguely alleges a visit "in or about September 2025." (FAC ¶ 153-54.) Given that website content, cookie configurations, and consent banners are dynamic and change over time, such a vague time window covering multiple alleged visits still does not provide Deckers adequate notice of which representations were made or how cookies functioned on the specific date(s) Albrigo visited. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014), aff'd, 649 F. App'x 424 (Rule 9(b) not satisfied where plaintiff failed to identify when he viewed website or relied on its contents, which were subject to change over time).[3]

[3] Nor did Deckers even own or control the Sanuk website in September 2025. As Plaintiffs are well aware from Deckers original motion to dismiss and meet and confer efforts, Deckers sold the Sanuk brand on August 15, 2024 and has not owned or operated it since. (Dkt. 18 at 11.)

Additionally, the FAC continues to rely on generic screenshots taken by unidentified persons at unspecified times. The FAC does not tie any screenshot or network trace to Plaintiffs' actual visits. It does not allege what specific language the banner displayed to Ortiz in "April or May 2025" or to Albrigo "in or about September 2025," nor does it allege what specific cookies were transmitted after their particular opt-out selections. These are precisely the "particulars of [each Plaintiff's] own experience" that Rule 9(b) demands. *See Pirozzi*, 913 F. Supp. 2d at 850.

Lastly, the FAC still uses boilerplate language that each Plaintiff saw the "same or substantially similar" banner language across all websites, without specifying which language on which website. This vague, conclusory approach fails to give Deckers notice of the specific misrepresentations at issue. *See Neubronner*, 6 F.3d at 671 (purpose of particularity is to give defendants notice of the specific misconduct so they can defend against the charge). Consequently, the fraud claim must again be dismissed for lack of specificity. *See, e.g., Ortiz v. Foris Dax, Inc.*, No. 25-cv-08950, 2026 U.S. Dist. LEXIS 113330, at *24 (N.D. Cal. May 21, 2026) (Chen, J.) (dismissing fraud claim in case with substantially similar allegations filed by same Plaintiffs' counsel and same named Plaintiff Ortiz for lack of particularity); *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *25-26 (N.D. Cal. Jan. 27, 2026) (Pitts, J.) (dismissing fraud claim for lack of particularity in case with substantially similar allegations filed by Plaintiff's counsel).

**B. <u>The FAC Again Fails To State A Claim For Wiretapping Under CIPA Because Plaintiffs Have Not Plausibly Alleged In-Transit Interception.</u>**

California Penal Code Section 631(a) prohibits, among other things, "willfully attempting to learn the contents or meaning of a communication in transit over a wire." The Ninth Circuit has made clear that "'intercept' . . . is 'to stop, seize, or interrupt in progress or course before arrival.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Under this standard, interception under Section 631(a) requires acquisition of the communication during transmission; accessing stored data after the communication arrives at its intended destination does not constitute interception. *See id.*; *Lau v. Gen. Digit. Inc.*, No. 22-cv-08981-RFL, 2024 U.S. Dist. LEXIS 81310, at *5 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (holding that wiretapping

concerns "the unauthorized interception of communications, not any subsequent storage and/or use'"). The Court dismissed the original wiretapping claim and held that:

> At most, the complaint describes that when a user takes a certain action, a cookie might send information to a third party . . . However, the complaint does not indicate whether the cookie sends this information immediately or contemporaneously with the information's creation, nor does the complaint provide any information regarding when this transmission occurs . . . The complaint's allegations therefore **do not plausibly suggest users' communications were intercepted while in transit** or while they were being sent or received.

(Dkt. 30 at 4) (emphasis added). The Court granted leave to amend so Plaintiffs could "provide additional allegations concerning when the communications at issue were allegedly intercepted." (*Id.* at 5.) The FAC does not provide those additional allegations. Instead, it simply adds conclusory assertions that third parties "read" or "learned" communications "while in transit." (FAC ¶ 123.) But the FAC's operative factual allegations remain materially identical to those the Court already found insufficient. The FAC still alleges that after users selected Manage Preferences, adjusted settings, and continued browsing, "the user's browser ma[de] GET and POST HTTP requests to third-party domains" such as Facebook, Google, bat.bing.com, [and] tr.snapchat.com . . . and sent cookies with those requests. (FAC ¶ 34.)

These allegations describe what the Court previously held as insufficient: separate, direct transmissions from Plaintiffs' browsers to third-party domains, not interception of communications between Plaintiffs and Deckers while those communications ***were en route*** to Deckers. The data is alleged to have reached third parties because Plaintiffs' browsers independently sent HTTP requests to those third parties. That is a direct communication between the user's browser and the third party, not an interception of a Deckers-bound communication before its arrival.

Merely adding the words "while in transit" does not transform a factual deficiency into a plausible allegation. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476, at *10–11 (N.D. Cal. Jan. 25, 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough" without specific facts making in-transit interception plausible); *Rosenow v. Facebook, Inc.*, No. 19-cv-1297-WQH-MDD, 2020 U.S. Dist. LEXIS 73513, at *22

(S.D. Cal. Apr. 27, 2020) (dismissing wiretapping claim where allegations of "in transit" interception were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("conclusory" allegation of interception "during transmission" supported only by vague real-time collection allegations is insufficient to state a claim).

Moreover, the FAC also fails to allege how or when a third party stopped, seized, interrupted, or acquired a Deckers-bound communication before its arrival at Deckers. There is no allegation of any mechanism by which a third party could have diverted or copied a communication intended for Deckers' servers while that communication was traveling to Deckers. The FAC describes a separate communication channel—one initiated by code in the user's browser sending data directly to third-party servers—which is fundamentally distinct from intercepting a communication in transit between the user and Deckers. As Judge Chhabria recently held in *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025), "reading or learning the contents" of a communication requires "some effort at understanding the substantive meaning" of the communication, and a defendant must do more than merely receive data in transit to satisfy Section 631(a). Courts "should not contort" CIPA "to fit" online data analytics into "the language of a 1967 criminal statute about wiretapping." *Id.* at 1119. That caution ***applies with full force here***, where the operative facts ***describe standard, commonplace web analytics***—not wiretapping.

Because Plaintiffs still allege only that their browsers sent data directly to third parties, rather than the requisite allegations that third parties intercepted communications between Plaintiffs and Deckers "in transit," the wiretapping claim under Section 631(a) fails and should be dismissed. *See, e.g., Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645, 2026 U.S. Dist. LEXIS 126682, at *15 (N.D. Cal. June 8, 2026) (dismissing wiretapping claim in amended complaint in case with similar CIPA allegations from Plaintiffs' counsel for failure to state a claim); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 U.S. Dist. LEXIS 230732, at *5-6 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) (holding that liability under Section 631(a) requires underlying third-party violation of Section 631(a)).

**C. The FAC Still Fails To State A Claim For Unjust Enrichment.**

Plaintiffs made zero changes from their original unjust enrichment claim to their new unjust enrichment claim. (FAC ¶¶ 241-250.) Consequently, it must be dismissed again for the same exact reasons as before. First, the Court dismissed the original unjust enrichment claim because the original complaint alleged only that without the other claims Plaintiffs would have "no adequate legal remedy"—a conclusory allegation that did not plausibly suggest Plaintiffs lack an adequate remedy at law. (Dkt. 30 at 5 (citing *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025)).) The FAC adds nothing new. It still does not provide non-conclusory allegations explaining why the legal remedies sought under Plaintiffs' other claims—damages, statutory penalties, injunctive relief—are inadequate. As such, it should be dismissed again. *See, e.g., Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907, at *11 (N.D. Cal. Jan. 6, 2026) (Lin, J.) (dismissing unjust enrichment in CIPA case where "Plaintiffs have failed to allege that they lack an adequate remedy at law"); *Marden v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 132292, at *16 (N.D. Cal. July 3, 2024) (same).

Second, and fatal to Plaintiffs' claim, California law does not recognize unjust enrichment as a standalone cause of action, as it is merely synonymous with restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020). Third, even if construed as a quasi-contract claim for restitution, where a benefit is unjustly conferred through mistake, fraud, coercion, or request, Plaintiffs must identify the specific benefit received and retained by Defendant. *See California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024) (Pitts, J.). Here, the Complaint fails to allege any such benefit; the Websites are free and publicly accessible.

Fourth, restitution cannot be claimed absent a sufficiently pled actionable misrepresentation. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (Corley, M.J.). As discussed above, Plaintiffs have not alleged fraud with the requisite particularity. "[W]ithout the other claims, plaintiffs' claim for unjust enrichment fails." *Hoey v.*

*Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.). Accordingly, the unjust enrichment claim must be dismissed with prejudice.

**D. Plaintiffs' Privacy Claims Do Not Meet The High Bar Needed In This District.**

Plaintiffs' claims for intrusion upon seclusion and invasion of privacy fail at the pleading stage because the FAC lacks sufficient allegations to overcome the high bar in this district to plead privacy claims. "Claims for intrusion upon seclusion under California common law and invasion of privacy under the California Constitution are substantively similar." *In re Meta Android Priv. Litig.*, 2026 U.S. Dist. LEXIS 104066, *22, 2026 LX 247754, _ F.Supp.3d _, 2026 WL 1279416 (N.D. Cal. May 11, 2026) (citations omitted). Both claims require alleging: (1) there exists a reasonable expectation of privacy and (2) the intrusion was highly offensive. *Id.*

1. Plaintiffs Had No Reasonable Expectation of Privacy.

Plaintiffs do not allege they had a reasonable expectation of privacy in the data at issue because they do not allege what data, let alone how much, Deckers collected about them. To determine whether a plaintiff had a reasonable expectation of privacy, courts consider "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Plaintiffs only make conclusory assertions about what type of data Deckers could have collected; there are no well-pled allegations of what data Deckers actually collected about Plaintiffs, let alone what the volume of such collection was. Further, Deckers' privacy policy negated any reasonable expectation of privacy in Plaintiffs' information. *See Lloyd v. Facebook, Inc.*, 2024 U.S. App. LEXIS 16527, *5 (9th Cir. Jul. 8, 2024) ("[B]ecause Facebook's data policy gives clear notice that third party partners may share data with Facebook, Lloyd did not have a reasonable expectation of privacy in this information."). Plaintiffs had no reasonable expectation of privacy, and their claims must be dismissed.

2. The FAC Does Not, And Cannot, Allege A Highly Offensive Intrusion.

Plaintiffs' allegations, even taken as true, only assert routine commercial behavior by Deckers that fail as a matter of law to establish a highly offensive intrusion. "This District sets a

high bar when assessing the 'highly offensive' requirement." *Hammerling*, 615 F. Supp. 3d at 1088. "Courts in this district have held that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Id.* at 1090 (citing, *inter alia*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)). To determine whether a defendant's actions rise to the level of "highly offensive," courts consider a variety of factors "such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" as well as the use of deceit. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020).

For instance, another court in this district recently dismissed nearly identical privacy claims by the same firm representing Plaintiffs in this case because the complaint failed to plead a highly offensive intrusion. In *Ortiz v. Foris Dax, Inc.*, the plaintiffs alleged that the defendant violated their privacy by "placing third-party tracking cookies after users explicitly chose the option to disable them." 2026 U.S. Dist. LEXIS 113330, at *10. The court dismissed the plaintiffs' privacy claims on the grounds they failed to adequately allege a "highly offensive intrusion" because "[a]s currently pled, Plaintiffs may have opened the website, rejected cookies, viewed the homepage for a few seconds, closed the website, and never returned. In that circumstance, it is difficult to see how the information collected about Plaintiffs — that they visited a cryptocurrency website on one occasion — constitutes an 'egregious breach of the social norms.'" *Id.* at *11-12. The *Ortiz* court also found that the plaintiffs' conclusory allegations that there was "surreptitious [data] collection" were insufficient because the Ninth Circuit had previously found that surreptitious collection was not highly offensive where "there were no allegations that the tracking continued after the plaintiffs stopped using the defendant's service." *Id.* at *12. As the *Ortiz* court reasoned, "[o]nce Plaintiffs left Crypto.com, while they likely remained within the data-tracking ecosystem of third-parties like Google, it cannot be said that Crypto.com continued to track them." *Id.* at *12-13.

Other courts in the Northern District, and elsewhere throughout California, have likewise regularly dismissed privacy claims on similar grounds. *See, e.g.*, *In re iPhone Application Litig.*,

844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing invasion of privacy claim where "information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices" because it was not highly offensive); *Garcia v. Blackhawk Network, Inc.*, 2026 U.S. Dist. LEXIS 75154, at *13 (C.D. Cal. Apr. 1, 2026) ("misrepresentation alone" not "enough to meet the highly offensive bar"); *Belluomini v. CitiGroup, Inc.*, 2013 U.S. Dist. LEXIS 149142, *8, 2013 WL 5645168 (N.D. Cal. Oct. 15, 2013) (noting invasion of privacy claims must meet a "high bar" and dismissing invasion of privacy claim that failed to adequately allege a highly offensive act). Indeed, this Court recently dismissed similar privacy claims as routine commercial behavior, noting that under certain circumstances allegations of data collection without a user's knowledge or consent would still constitute routine commercial behavior. *See Tsering v. Meta Platforms, Inc.*, 2026 U.S. Dist. LEXIS 5762, *22, 2026 LX 95185, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) (Lin, J.) (dismissing invasion of privacy claim where "there is no additional aspect of Meta's data collection in this case suggesting that Meta was intentionally engaged in a secret or deceptive, and thus highly offensive, intrusion").

Like the nearly identical claims in *Ortiz* by the same firm, here, Plaintiffs' allegations fail to allege a privacy claim. The FAC does not allege how Plaintiffs interacted with the Websites, nor what information was collected during Plaintiffs' visits. That is insufficient to adequately allege a highly offensive intrusion. *See Ortiz*, 2026 U.S. Dist. LEXIS 113330 at *11-12. Moreover, the FAC does not allege that any tracking, surreptitious or otherwise, continued after the Plaintiffs stopped using the Websites. *Id.* at *12-13. At most, Plaintiffs merely allege routine commercial behavior, which this Court has previously found to be insufficient to state a claim. *See Tsering*, 2026 U.S. Dist. LEXIS 5762 at *22.

### E. <u>The Pen Register Claim Fails Because Plaintiffs Do Not Allege They Ever Communicated With The Websites.</u>

Plaintiffs fail to state a claim under CIPA's pen-register provision because the FAC does not allege Plaintiffs communicated with the Websites. A pen register is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted

by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

Plaintiffs' pen register claim fails at the outset because they do not allege they ever communicated with the Websites, as discussed above. Courts regularly dismiss pen register claims that do not adequately allege the plaintiff, rather than the general putative class, communicated with a website. *See, e.g.*, *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 937 (N.D. Cal. 2026) (Pitts, J.) (dismissing pen register claim because the plaintiffs "have not alleged that they ever communicated with the website. In the absence of any allegation that they communicated with the website, they cannot allege that the 'dialing, routing, addressing, or signaling information' relating to any such communication was unlawfully tracked"); *Shah v. MyFitnessPal, Inc.*, 2026 U.S. Dist. LEXIS 15193, *23-24 (same).[4]

### F. <u>A Stay Of Discovery Pending Resolution Of This Motion Would Promote Judicial Economy.</u>

Despite the fact that no Scheduling Conference has been held in this case and no joint Rule 26(f) report has been submitted by the parties, Plaintiffs have served Deckers with 119 document requests and 13 interrogatories, many of which contain numerous discrete subparts. (Declaration of Travis Brennan ("Brennan Decl.") ¶ 2, Exs. A, B, C.) Plaintiffs are now threatening to file a motion to compel discovery responses if Deckers does not engage in Plaintiffs' premature fishing expedition. And as of yesterday afternoon, on June 22, 2026, Plaintiffs just served Deckers with notices of third-party document subpoenas to be served on Microsoft, Meta Platforms, and Google related to this case, with each document subpoena containing over 20 pages and many document requests seeking voluminous data. (Brennan Decl., Exs. D, E, F.) Accordingly, Deckers respectfully requests that the Court stay such

[4] Deckers is aware that the Court has previously interpreted CIPA's pen register provision to apply to the collection of a device's IP address, rather than the IP addresses of the computers the device is communicating with. Deckers respectfully submits that the collection of a device's IP address does not constitute a pen register as a pen register does not capture the IP address of the device it is installed on, but rather it captures the outgoing IP addresses the device is communicating with. Deckers accordingly preserves this issue for appeal.

premature discovery pending the resolution of this Motion in the interest of judicial efficiency and conserving the Court's, the parties', and the non-parties' resources.

Under controlling Ninth Circuit precedent, "The purpose of F.R.Civ.P 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). "The district court has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 U.S. Dist. LEXIS 11162, at *4 (N.D. Cal. Feb. 8, 2010) ("A district court has broad discretion to stay discovery pending the disposition of a dispositive motion.").

Numerous courts have recognized that a stay of expensive and burdensome discovery is appropriate while a court considers the merits of a substantial motion to dismiss. *See, e.g.*, *Arcell v. Google LLC*, 2024 U.S. Dist. LEXIS 45530, *32 (N.D. Cal. Feb. 5, 2024) (Lin, J.) ("the discovery stay [] remains in place unless and until the Court holds that Plaintiffs have stated a claim upon which relief can be granted"); *In re Nexus 6p Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2017 U.S. Dist. LEXIS 132698, at *7-8 (N.D. Cal. Aug. 18, 2017) (staying discovery pending resolutions of motions to dismiss that "could be potentially dispositive of [certain] claims, which in turn would limit the scope of discovery" because a stay "allows all parties to commence discovery with a better understanding of which claims . . . they must answer."); *see also Cellwitch, Inc. v. Tile, Inc.*, No. 4:19-CV-01315, 2019 U.S. Dist. LEXIS 182943, at *5 (N.D. Cal. Oct. 22, 2019) (White, J.) (staying discovery pending decision on motion to dismiss in "the interest of judicial efficiency and conserving the Court's resources" where plaintiffs did "not demonstrate that it will suffer harm if the Court stays discovery briefly until after the Court rules on [defendant's] motion to dismiss."); *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 157156, at *5 (N.D. Cal. Aug. 19, 2021) (Gilliam, J.) (staying discovery where "the pending motion to dismiss will be fully briefed next month," so "[t]here is therefore minimal risk of prejudice to either party" and "the Court finds in its discretion that both party and judicial resources will be most efficiently used if discovery is stayed until the Court decides the pending motion to dismiss").

Courts in this District apply a two-pronged test to determine whether discovery should be stayed pending resolution of a dispositive motion. First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. *See Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003). Second, the court must determine whether the pending motion can be decided absent discovery. *Id.* at 352.

Here, Deckers squarely meets both prongs of the test. First, this Motion is potentially dispositive of this entire case because Deckers moves to dismiss all claims, half of which were previously dismissed on Deckers original motion to dismiss. At minimum, this Motion is at least potentially dispositive on many different issues at which discovery is directed. For instance, even if the Court were only to dismiss the fraud claim, then many of the document requests and interrogatories would become irrelevant and/or should be substantially narrowed in scope, including but not limited to, RFP Nos. 6-8, 24-33, 43, 45-47, and Interrogatory Nos. 9-12. (Brennan Decl., Exs. B, C.) Second, this Motion can be decided without discovery, as this Court did in deciding upon Deckers' original motion to dismiss. The Court need only consider whether the FAC states a claim on its face and need not consider any discovery for such purposes. Accordingly, the Court should stay all discovery in this action until the Court decides this pending Motion.

**V. CONCLUSION**

For these reasons, Deckers respectfully requests that the Court dismiss the FAC with prejudice and stay all discovery in this action until the Court decides this pending Motion.

DATED: June 23, 2026

STRADLING YOCCA CARLSON & RAUTH LLP

By: */s/ Travis P. Brennan*
Travis P. Brennan
Sean Thomas Lobb

Attorneys for Defendant
DECKERS OUTDOOR CORP.