**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORTIZ and LAURA WILLIS ALBRIGO, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DECKERS OUTDOOR CORP.,<br><br>Defendant. | Case No. 3:25-cv-09631-RFL<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED ACTION CLASS ACTION COMPLAINT AND MOTION TO STAY<br><br>Hon. Rita F. Lin |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 2
III. ARGUMENT ........ 3
A. Plaintiffs Sufficiently Plead their Wiretapping Claims under CIPA § 631(a). ........ 3
B. Plaintiffs Adequately Plead Fraud Under Rule 9(b). ........ 5
C. Plaintiffs Allege Common Law Privacy Claims ........ 10
1. Defendant Created a Reasonable Expectation of Privacy ........ 11
2. Defendant's Intrusion is Highly Offensive. ........ 12
D. Plaintiffs Sufficiently Allege Their Pen Register Claims. ........ 13
E. The Court Should Deny Defendant's Motion to Stay Discovery. ........ 14
F. Plaintiffs Request Leave to Amend If Necessary. ........ 15
IV. CONCLUSION ........ 15

**TABLE OF AUTHORITIES**

**Cases**

*Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645, 2026 U.S. Dist. LEXIS 126682 (N.D. Cal. June 8, 2026) ........ 5, 6, 10

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) ........ 7

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ........ 6

*D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) ........ 11, 13, 14

*Davis v. Facebook, Inc.* ("*In re Facebook Inc. Internet Tracking Litig.*"), 956 F.3d 589 (9th Cir. 2020) ........ 11, 12, 13

*Doe v. Xytex Corp.*, No. C 16-02935 WHA, 2017 U.S. Dist. LEXIS 43623 (N.D. Cal. Mar. 24, 2017) ........ 7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ........ 8

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) ........ 7

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ 11, 13

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ........ 13

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ........ 11, 12, 13

*Goldstein v. Rumble Inc.*, No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489 (C.D. Cal. Apr. 24, 2026) ........ 5

*Hamman v. Cava Grp., Inc.*, No. 22-cv-593-MMA (MSB), 2023 U.S. Dist. LEXIS 215443 (S.D. Cal. Dec. 4, 2023) ........ 10

*Harper v. Silver*, 200 Cal. App. 2d 103 (1962) ........ 6, 7

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ........ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994) ........ 12

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 13

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 5

*M.H. v. Done Glob. Inc.*, No. 24-cv-03040-RFL, 2025 U.S. Dist. LEXIS 38456 (N.D. Cal. Feb. 26, 2025) ........ 2

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) ........ 9

*Ortiz v. Foris Dax, Inc.*, No. 25-cv-08950, 2026 U.S. Dist. LEXIS 113330 (N.D. Cal. May 21, 2026) ........ 10, 13

*Ovation Toys Co. v. Only Hearts Club*,
675 F. App'x 721 (9th Cir. 2017) ........ 10

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025)........ 11, 13

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 4

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 3

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021)........ 11, 13

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 U.S. Dist. LEXIS 13476 (N.D. Cal. Jan. 25, 2022)........ 5

*Rosales v. FitFlop USA, LLC*,
882 F. Supp. 2d 1168 (S.D. Cal. 2012) ........ 8

*Rosenow v. Facebook, Inc.*,
No. 19-cv-1297-WQH-MDD, 2020 U.S. Dist. LEXIS 73513 (S.D. Cal. Apr. 27, 2020) ........ 5

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) ...... 10, 11, 12, 13

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)........ 13

*Tavernetti v. Superior Court of San Diego Cty.*,
22 Cal. 3d 187 (1978) ........ 3

*Tradebay, LLC v. eBay, Inc.*,
278 F.R.D. 597 (D. Nev. 2011)........ 15

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018)........ 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 4

*Victor v. R.C. Bigelow, Inc.*,
No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014)........ 9

*Vishal Shah v. Politico LLC*,
No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) ........ 11, 13

*Wenger v. Monroe*,
282 F.3d 1068 (9th Cir. 2002)........ 15

*Wiley v. Universal Music Grp., Inc.*,
No. 25-cv-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 10

*Yamasaki v. Zicam LLC*,
No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494 (N.D. Cal. Oct. 25, 2021) ........ 9

**Statutes**

Cal. Pen. Code § 631(a) ........ 3

Cal. Pen. Code § 638.50(b)........ 14

Cal. Pen. Code § 638.51(a) ........ 14

**Rules**

Fed. R. Civ. P. 12 ........ 10

Fed. R. Civ. P. 12(g) ........ 2, 14
Fed. R. Civ. P. 26(f) ........ 15

## I. INTRODUCTION

Plaintiffs Ortiz and Albrigo ("Plaintiffs") filed their First FAC ("FAC") against Deckers Outdoor Corp. ("Defendant" or "Deckers") following this Court's order dismissing Plaintiffs' CIPA wiretapping, common law fraud, and unjust enrichment claims, but otherwise denying Defendant's motion to dismiss. Eager for another bite at the apple, Defendant again moves to dismiss all of Plaintiffs' claims, including the common law privacy claims and CIPA pen register claims, which this Court already found viable. ECF No. 33 ("Motion").[1] Each of Defendant's arguments fail.

For the CIPA wiretapping claims, the FAC includes extensive allegations describing how the Plaintiffs' communications were intercepted and read as they communicated with the Websites[2]—i.e., in real time, while in transit. Defendant argues that Plaintiffs allege only that their browsers sent data directly to third parties, rather than that third parties intercepted communications between Plaintiffs and Deckers. But this mischaracterizes the allegations. Plaintiffs allege that when they made communications with Deckers on the Websites, the cookies that Deckers placed sent those communications to third parties, which read the communications in real time. This is sufficient.

For Plaintiffs' common law fraud claims, the FAC includes new allegations regarding Defendant's knowledge and greater specificity regarding Plaintiff Albrigo's visits—as well as allegations specifying the false statements on which she relied. In response, Deckers now asserts that Rule 9(b) requires Plaintiffs to plead knowledge with specificity—it does not, that Plaintiffs may not rely on allegations of knowledge based on information and belief is improper—they may, and that the specificity of Plaintiff Albrigo's Website visits is inadequate due to unspecified potential changes in the Websites over time—which are contrary to facts alleged in the Complaint.

The arguments Deckers now asserts for dismissal of Plaintiffs' CIPA pen register and common law privacy claims were available to it on its first motion to dismiss—Deckers simply

---

[1] Defendant disregarded this Court's Order limiting briefs to 15 pages; argument exceeding the page limit should be stricken.

[2]Including www.hoka.com; www.teva.com; www.sanuk.com; www.ugg.com; and www.koolaburra.com (collectively, the "Websites").

chose not to make them. This violates FRCP Rule 12(g)(2). Although courts may exercise discretion and consider such arguments, where, as here, a Defendant asserts an argument it could have made previously will cause delay, a court may properly find that argument waived. Here, Deckers belatedly raises arguments to support its motion to stay—which the Court should not reward.

Regardless, should the Court consider Defendant's arguments, it should reject them. For Plaintiffs common law privacy claims, Deckers claims that, even though its cookie banner promised Plaintiffs privacy, they had no reasonable expectation of privacy. This argument has been considered and rejected by all courts in this District and should be rejected here for the same reasons. Likewise, Deckers argues that the intrusion was not highly offensive *as a matter of law*. As this Court, and many others have found, however, "this issue is generally not suitable for determination on the pleadings." *M.H. v. Done Glob. Inc.*, 2025 U.S. Dist. LEXIS 38456, at *6 (N.D. Cal. Feb. 26, 2025).

Defendant's argument for dismissal of Plaintiffs' CIPA pen register claim—that Plaintiffs' have not alleged that they communicated with the Websites, is patently false and ignores the extensive allegations in the FAC detailing the information obtained by the third parties as a result of the pen registers. This Court should deny Defendant's motion to dismiss in its entirety.

Finally, the Court should deny Defendant's motion to stay, which is merely an opportunistic delay tactic rather than an attempt to promote efficiency.

## II. FACTUAL BACKGROUND

As the Court reviewed the facts of this case in ruling on Defendant's first motion to dismiss, Plaintiffs briefly summarizes the facts. When Plaintiffs[3] visited the Websites, the Websites immediately displayed a popup cookie banner. FAC ¶ 1. Defendant's popup cookie consent banner and Storage Preferences window led Plaintiffs to reasonably believe that they disabled or rejected cookies and tracking technologies. Defendant's representations were false. Defendant did not honor Plaintiffs' or other users' choices. Instead, Defendant knowingly caused the Third Parties to collect and intercept communications that disclosed the Websites' visitors' Private Communications. *Id.*

[3] Defendant intimates that Plaintiffs are testers who visit websites to create a basis for a lawsuit. This disparagement is not well-taken and is explicitly refuted in the FAC. FAC ¶¶ 143, 156.

This Court granted in part and denied in part the motion to dismiss Plaintiffs' initial complaint. ECF No. 30. The Court found that the complaint failed to plausibly allege that Defendant knew its representations were false and that Plaintiff Albrigo failed to allege specifically when she visited the Websites. *Id*. at 2–3. As to Plaintiffs' CIPA wiretapping claim, the Court found that Plaintiffs did not adequately allege that their communications were read "in transit." *Id*. Finally, the Court dismissed Plaintiffs' unjust enrichment claim, which Plaintiffs do not oppose.

**III. ARGUMENT**

**A. Plaintiffs Sufficiently Plead their Wiretapping Claims under CIPA § 631(a).**

The fourth clause of Section 631(a) makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1116 (S.D. Cal. 2024) (cleaned up). Defendant knowingly integrated its Websites with code that causes the Third Parties to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." FAC ¶¶ 3, 32. These cookies transmit communications that third parties intercept and read in real time. *See, e.g.*, *id*. ¶¶ 31–34, 41–42, 123–31.

In its Order, this Court found that while Plaintiffs "have plausibly alleged that the content of their communications was read, they have not plausibly alleged that their communications were intercepted while they were being sent, received, or while they were in transit." ECF No. 30 at 4. Preliminarily, while interception of communications in transit violates CIPA, "divulging the contents of an intercepted communication is an independent act that further intrudes on the privacy of the parties to the communication," and is also "illegal under section 631, subdivision(a)." *Tavernetti v. Superior Ct. of San Diego Cty*., 22 Cal. 3d 187, 193 (1978). "This is the rule regardless of the original legality of the interception." *Id*. The California Supreme Court has rejected the argument that CIPA prohibits only the unauthorized monitoring of communications while they are "in transit," and that "once a phone message reaches its place of destination it is no longer in transit . . . ." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). Indeed, viewing "section 631 as merely encompassing the use

of electronic amplifying and recording devices, [] is erroneous. Such a construction is inconsistent with the broad wording and purpose of the statute, and would render superfluous the language proscribing attempts 'in any unauthorized manner . . . to learn the contents . . . of any . . . communication . . . .'" *Id.* at 360. Here, Plaintiffs allege that Defendant programmed its Websites to cause third party cookies to intercept the contents of user's communications. Regardless of whether the Third Party learns the contents of communications while "in transit," the fact that the cookies are placed after they are explicitly rejected, and those cookies are used by the Third Parties to learn the contents of the communications, Plaintiffs have sufficiently pled the unauthorized manner used to learn the contents of Plaintiffs' communications in violation of CIPA.

Regardless, Plaintiffs added allegations outlining how communications are intercepted in transit from consumers' browsers to the Websites. *See* FAC ¶¶ 123–31. These allegations detail how Third Parties read and analyze the communications in real time to validate, filter, analyze, and transform the data for subsequent processing, including the use of processing platforms designed to operate on data "in flight." *See id*. ¶ 129. The allegations are supported by the screenshots of network activity that identify specific examples of the cookies that transmit data in real time. *Id*. ¶¶ 31–34. Thus, the FAC alleges that "the interception must occur contemporaneous with the sending or receipt of the message*." See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023).

Defendant argues that the FAC's allegations remain the same. Mot. at 18. This is false. *E.g.*, FAC ¶ 123. Defendant's other argument is that Plaintiffs allege separate communications to the Third Parties, not intercepted communications meant for Defendant. Mot. at 18. Whether a semantic ploy or simple confusion by Defendant, this is also wrong. Plaintiffs allege "the Third Parties intercept user communications while those communications are in transit from consumers' browsers to Defendant's Website." FAC ¶ 123. Indeed, Defendant's argument is contradictory. It first argues that the FAC does not allege "any mechanism by which a third party could have diverted or copies a communication intended for Deckers." Mot. at 18. Yet it acknowledges that the FAC contains allegations describing code (i.e., the software code Defendant knowingly incorporated into its Websites to cause Third Party cookies to attach to Plaintiffs' browsers) that sends data (i.e.,

Plaintiffs' communications intended for Defendant) to the Third Parties. Mot. at 18. But this is the point. The wiretap, as alleged in the FAC, is the software code Defendant intentionally incorporated into the Websites, which caused Third Party cookies to attach to consumer browsers and transmit communications *intended for Defendant* to Third Parties.

The cases Defendant cites involve only conclusory allegations of in transit interception. *See Rodriguez v. Google LLC*, 2022 U.S. Dist. LEXIS 13476, at *7–10 (N.D. Cal. Jan. 25, 2022) (plaintiffs failed to describe how Google intercepted the relevant data in real time and made only vague and inapposite references to "real-time ad bidding," which was a separate issue); *Rosenow v. Facebook, Inc*., 2020 U.S. Dist. LEXIS 73513, at *22 (S.D. Cal. Apr. 27, 2020) (dismissing wiretapping claim where allegations of "in transit" interception were conclusory); *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (allegation of interception "during transmission" supported only by vague real-time collection allegations is insufficient). Unlike those cases, here Plaintiffs detail the operation of the code and processing platforms used to intercept communications intended for the Websites. Plaintiffs even identify an example of a Third Party intercepting a search term entered by a Website user that was intended for the Website, but was in fact intercepted, in real time, by a Third Party. *See*, *e.g*., FAC ¶ 75 (Google intercepted a search term sent to the Website); *see also Goldstein v. Rumble Inc*., 2026 U.S. Dist. LEXIS 113489, at *14–15 (C.D. Cal. Apr. 24, 2026) (distinguishing cases that make "conclusory" allegations).

Finally, Defendant's citation to *Ayora v. Inspire Brand,* 2026 U.S. Dist. LEXIS 126682 (N.D. Cal. June 8, 2026) is misleading. Mot. at 19. The claim there was not dismissed on "in transit" grounds. Rather, the court agreed that the plaintiffs "allege that the cookies track in real time Plaintiffs' browsing activities and private communications," and instead concluded that the plaintiffs had not alleged that they transmitted communications. *Id*. Here, the FAC alleges the real time interception of Plaintiffs' communications. The Court should deny the motion as to the wiretapping claim.

**B. Plaintiffs Adequately Plead Fraud Under Rule 9(b).**

"Rule 9(b) to require[s] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (quotation marks omitted). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

This Court dismissed Plaintiffs' fraud claim because "the complaint fails to plausibly allege with particularity that Deckers knew its representations that users could disable non-essential cookies and opt out of their information being shared were false." ECF No. 30 at 2. To satisfy the requirement of scienter, California law requires "either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant." *Harper v. Silver*, 200 Cal. App. 2d 103, 108 (1962). Plaintiffs allege that "[b]y implementing the cookie banner, Defendant undertook responsibility for ensuring that the banner accurately communicated users' privacy choices and properly effectuated those choices." FAC ¶ 226. Defendant had the ability to audit its banner and was obligated to do so. *Id.* ¶ 228 (Defendant "must affirmatively configure consent settings and tag behavior to prevent tracking technologies from firing after users reject cookies."); *id.* ¶ 230 (Defendant had an obligation to ensure the banner operated correctly based on industry standards and privacy regulations). Based on its ability to audit the operation of the banner and review and use the intercepted data for its benefit, "Defendant had information available to it demonstrating that users' purported opt-out selections were not being honored and that users' Private Communications continued to be collected and transmitted to the Third Parties notwithstanding Defendant's contrary representations." *Id.* ¶ 228. Thus, Defendant either had actual knowledge that the representations in the cookie banner were false, or that the statements were "carelessly and recklessly made, in a manner not warranted by the information available to defendant." *Harper*, 200 Cal. App. 2d at 108; *see also Doe v. Xytex Corp.*, 2017 U.S. Dist. LEXIS 43623, at *14–15 (N.D. Cal. Mar. 24, 2017) (allegations that defendant had access to information revealing the falsity of its representations sufficient to allege scienter).

Defendant argues that "Rule 9(b) requires particularized allegations of actual knowledge" and that Plaintiffs need to allege the specific person or persons with knowledge of falsity and how

those persons became aware of the fact of the falsity. Mot. at 14. This misstates black letter law and misrepresents this Court's Order. *United States ex rel. Anita Silingo v. WellPoint, Inc*., 904 F.3d 667, 679 (9th Cir. 2018) ("Although the circumstances of a fraud must be pleaded with particularity, knowledge may be pleaded generally."); Fed. R. Civ. P. 9(b). As explained above, Plaintiffs allege that Defendant made careless and reckless representations that were unwarranted by the information available to it. Plaintiffs have further bolstered the FAC with allegations that "Defendant operated, controlled, configured, approved, or maintained settings that permitted the Third Parties' tracking technologies to continue collecting users' Private Communications even after users selected options indicating their choice to disable and/or reject non-essential cookies and opt out of the collection, use, sale, and/or sharing of their Private Communications" and that, because industry standards, privacy frameworks, and applicable statutes and regulations required Defendant to ensure its cookie banner was working correctly, that it knew it was not. FAC ¶ 227; *see also id*. ¶¶ 228–31. Defendant's claim that this Court already rejected a "should have known" theory misstates the prior ruling and conflicts with controlling California law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (federal court sitting in diversity must apply the substantive law of the state).

Defendant's remaining arguments fare no better. Deckers takes issue with some allegations being based on "information and belief." But such allegations are proper where, as here, essential information is within the other parties' knowledge, and Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). Contrary to Defendant's suggestion that Plaintiffs must identify a "specific person" who knew the allegations were false (Mot. at 14), Ninth Circuit law only requires the complaint "set forth facts from which an inference of scienter could be drawn." *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 995 n.5 (9th Cir. 2014) ("Rule 9(b) requires that 'circumstances constituting fraud' must be alleged with particularity but allows fraudulent intent to be alleged generally . . . . Rule 9 poses no barrier in itself to general pleading of fraudulent intent.").

Next, Defendant suggests that the "FAC lumps together 'Defendant and/or its agents' without distinguishing what Deckers itself knew from what a third-party vendor may have known." Mot. at 14–15. The phrase "Defendant and/or its agents" appears exactly once in the entire 130-page

complaint. *See* FAC. The remaining allegations apply squarely to Defendant as the actor that caused Third Party cookies to be placed after it made the representation they would not be, had the obligation to ensure compliance with its own promise, and had the tools to do so. In the face of these facts, Defendant either knew the representation was false or it made the representation recklessly given the information available to it. Thus, Plaintiffs adequately plead knowledge/intent.

Defendant next claims that the FAC still does not allege with the requisite specificity when Plaintiff Albrigo visited the Sanuk, Ugg, and Koolaburra Websites. Preliminarily, in its Order, the Court held that Plaintiff Ortiz's allegations that he visited "in or around April or May 2025" to be sufficient. ECF No. 30 at 4. Thus, on amendment, Plaintiff Albrigo alleges she visited the Sanuk and Ugg Websites on a monthly or bi-monthly basis for the past four years, including in September 2025. FAC ¶¶ 153–54. Moreover, the FAC specifies that the cookie banners on which Plaintiff Albrigo relied appeared in the same, or substantially similar, the form alleged in the FAC. *Id.* ¶¶ 153–55. These allegations meet the standards of Rule 9(b)—especially here, where there are no allegations that the Websites or cookie banners changed during this period. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175–76 (S.D. Cal. 2012) (allegations sufficed when plaintiffs provided "reproductions of Defendant's advertisements throughout the complaint, and attach substantially similar advertisements to the FAC which contain the alleged misrepresentations that serve as the basis of Plaintiffs' claims."). Defendant's suggestion that "website content, cookie configurations, and consent banners are dynamic and change over time" is conjecture that falls well beyond the four corners of the complaint, and is directly contradicted by Plaintiffs' allegations.

Defendant also argues that "neither Plaintiff alleges to have ever visited the Teva website" and that it "simply cannot determine what specific representations were made." Mot. at 16. Plaintiffs have provided screenshots of the "specific representations" made by Defendant on the Teva Website and the cookies that operated on that site. FAC ¶ 33. This argument is not relevant to whether Plaintiffs have stated a claim for fraud and instead directly parallels the "no standing for unpurchased products" argument typically presented in false advertising cases. *See Victor v. R.C. Bigelow, Inc.*, 2014 U.S. Dist. LEXIS 34550, at *24 (N.D. Cal. Mar. 14, 2014) (collecting cases, discussing merits of addressing as a question of standing on motion under Rule 12(b)(6) versus at

class certification). But there is widespread agreement that plaintiffs can have standing to sue for false advertising of unpurchased products if the products and claims are substantially similar. *E.g., Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Here, all of the Websites make the identical false promise that Defendant will not use certain cookies if visitors decline them. *See* FAC ¶ 27 ("the Websites immediately displayed to them a popup cookie consent banner, which was identical on each of the Websites"); *id*. ¶ 1 (defining the "Websites"). The claims thus involve physically similar Websites that cause nearly identical injuries giving rise to identical claims requiring identical legal analyses. They are thus "substantially similar," *see Yamasaki v. Zicam LLC*, 2021 U.S. Dist. LEXIS 205494, at *6 (N.D. Cal. Oct. 25, 2021) (laying out "substantial similarity" test), such that Plaintiffs have standing to pursue claims involving the related Websites.

Defendant's argument that there are "generic screenshots" is similarly inapposite. As explained above, Plaintiffs allege that the pop-up cookie consent banner was identical on each of the Websites. This allegation resolves all of Defendant's arguments regarding the "what" of Plaintiffs' fraud claims. *See* Mot. at 16–17. And, as this Court found the allegations that Ortiz visited in April or May 2025 to be sufficient, Defendant cannot regurgitate arguments here. This Court specifically concluded the date was needed so that ***Defendant*** can determine ""what specific representations regarding cookies were made on [its] websites on the specific dates that [Albrigo] visited those websites or determin[ing] how the websites were using any cookies placed on users' devices on those specific dates." ECF No. 30 at 3. As before, the FAC clearly contains such allegations, including specific allegations as to: (a) the reasons why Plaintiffs visited the Websites and what they did on the Websites (FAC ¶¶ 144, 153, 157); (b) Plaintiffs' rejection of cookies, using the options Defendant presented to them (FAC ¶¶ 145–48, 158–61), and (c) how Defendant's Websites nevertheless actually and surreptitiously transmitted Plaintiffs' and all other users' private communications to Third Parties (FAC ¶¶ 3–6, 31–122, 149–50, 162–63). Plaintiffs also plead numerous categories of data sufficient to place Defendant on notice of the particular misconduct alleged to permit Defendant to defend against the claims. *See Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017). Now, with specific dates, Defendant is fully on notice.

Finally, similar to Defendant's tactic in citing *Ayora*, Defendant again misrepresents holdings

in other online cookies cases. *See* Mot. at 17. In *Foris Dax*, Judge Chen held that plaintiff must allege "the year of any given visit" to satisfy the Rule 9(b) pleading requirements for fraud claims. *Ortiz v. Foris Dax, Inc.*, 2026 U.S. Dist. LEXIS 113330, at *24–25 (N.D. Cal. May 21, 2026). And just as this Court held in its Order, in *Shah v. MyFitnessPal*, Judge Pitts similarly required alleging the "when" of plaintiff's visit. *Shah v. MyFitnessPal, Inc.*, 2026 U.S. Dist. LEXIS 15193, at *26 (N.D. Cal. Jan. 27, 2026). Thus, Plaintiffs have amended to add the "when," and have included specificity beyond just the year. Consistent with this Court's Order and the other judges to consider the issue, alleging the "when" puts Defendant on sufficient notice to determine the specific representations at issue. *See id.*; *see also Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *10 (N.D. Cal. Dec. 17, 2025).

### C. Plaintiffs Allege Common Law Privacy Claims

As this Court observed, "Rule 9(b) [was the] only basis upon which Deckers move[d] to dismiss the invasion of privacy, intrusion upon seclusion, and pen register claims," and thus denied the motion after concluding that Rule 9(b) did not apply. Defendant now moves to dismiss these claims on additional bases that were available to it when it filed its first Rule 12 motion. "[U]nder Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial." *Hamman v. Cava Grp., Inc.*, 2023 U.S. Dist. LEXIS 215443, at *4 (S.D. Cal. Dec. 4, 2023); *see also* Fed. R. Civ. P. 12(g)(2) (parties "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.") Indeed, here, as in *Hamman*, "the factual footing has not even changed in a way that would give the Court some pause before using its discretion to ban this successive 12(b)(6) motion." *Id.* at *4–8. The Court should not consider any new arguments relating to the common law privacy claims.

Regardless, virtually every single court in this District to address such arguments in similar contexts has rejected them. *See, e.g.*, *Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *27 (N.D. Cal. July 14, 2025); *Haleon US Inc.*, 815 F. Supp. 3d 852, 868 (N.D. Cal. 2025); *MyFitnessPal, Inc.*, 2026 U.S. Dist. LEXIS 15193, at *16–17; *Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 935 (N.D. Cal. 2026); *Politico LLC*, 2026 U.S. Dist. LEXIS 25740, at *13 (N.D. Cal. Feb. 6,

2026); *Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *15–16 (N.D. Cal. Nov. 24, 2025). Claims for common law invasion of privacy and intrusion upon seclusion require: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *Davis v. Facebook, Inc.* ("*In re Facebook Inc. Internet Tracking Litig.*"), 956 F.3d 589, 601 (9th Cir. 2020); *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009). The conduct alleged here is textbook invasion of privacy: Defendant promised Plaintiffs that they could opt out of cookies but then immediately placed cookies on their devices and browsers anyway, and enabled third parties to collect broad swaths of data that users like Plaintiffs asked to keep private. *See Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 98074, at *28–29 (N.D. Cal. May 21, 2021) ("Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive…").

**1. Defendant Created a Reasonable Expectation of Privacy.**

Plaintiffs had a reasonable expectation of privacy in their private communications on the Websites because Defendant promised them that their browsing activity and Private Communications would remain private if they opted out of cookies. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy can arise if users decline consent to tracking). Even though Defendant does not contest that it promised Plaintiffs they could opt out of cookies while using the Websites, it oddly claims that Plaintiffs had no reasonable expectation of privacy. Mot. at 21. The fact Defendant is arguing that Plaintiffs should not have expected privacy even when *it promised them privacy* should not be ignored. Indeed, the manner in which the data was collected is significant. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 603–04 (a reasonable expectation of privacy can arise if users decline consent to tracking, if a defendant makes an affirmative statement that users' information would not be collected, and/or if the nature of the information collected is sensitive (such as browsing history correlated with additional personal information)); *MyFitnessPal, Inc.*, 2026 U.S. Dist. LEXIS 15193, at *14 ("Considering both MFP's affirmative representation that users could opt out of the tracking at issue

here and the CCPA, the 'customs, practices, and circumstances' surrounding plaintiffs' visits to MFP's website gave them a reasonable expectation of privacy with respect to the data whose collection MFP allegedly facilitated."). Defendant tricked Plaintiffs into believing that their browsing would be private through misrepresentation and deceit—violating social norms. The suggestion that Plaintiffs had no reasonable expectation of privacy when it told them to expect privacy asks this Court to believe that lies and deceit do not violate social norms. This Court should reject such a cynical position. Defendant's argument that "its privacy policy negated any reasonable expectation of privacy in Plaintiffs' information" must also be ignored. As Plaintiffs allege, Defendant's policy defines cookies and explain which ones are essential, analytics, personalization, and targeted advertising. FAC ¶ 26. If anything, Defendant's policy (assuming any Website user read the policy) explicitly defines which cookies could be rejected. And, as Plaintiffs allege, despite the explicit promise and explanation of which cookies could be rejected, Deckers placed the cookies.

**2. Defendant's Intrusion is Highly Offensive.**

Likewise, Plaintiffs have shown that Defendant's intrusion was highly offensive. "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (citation omitted). Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar claims based on a determination of how offensive or serious the privacy intrusion is); *Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *22 (N.D. Cal. Aug. 29, 2025) (agreeing with *Motorola Mobility LLC*); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez*, 2021 U.S. Dist. LEXIS 98074, at *28 ("[n]or is the offensiveness of Google's putative misconduct any

less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"). Here, the jury must consider all of the circumstances around Defendant's conduct, including the fact that it lied about not tracking visitors, to determine whether the invasion of privacy was highly offensive.

Despite Defendant's characterization of its conduct as "routine commercial behavior," promising consumers one thing and doing the opposite can hardly be described as "routine," especially when it comes to sharing users' private communications with third parties. No court has ever determined that such behavior is "routine," and, instead, courts hold such conduct is a highly offensive invasion of privacy. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive) *see also Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *27; *Haleon*, 815 F. Supp. 3d at 868; *MyFitnessPal, Inc*., 2026 U.S. Dist. LEXIS 15193, at *16–17; *D'Antonio*, 820 F. Supp. 3d at 935; *Politico LLC*, 2026 U.S. Dist. LEXIS 25740, at *13; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *15–16. Defendant cites to *Ortiz v. Foris Dax*, but in that case, unlike here, Plaintiffs did not allege what actions they took on the website, which the court determined made it impossible to decide whether the conduct was highly offensive. *Ortiz*, 2026 U.S. Dist. LEXIS 113330, at *11. It has since been corrected. Likewise, *Hammerling* is distinguishable because there, unlike here, there was no surreptitious collection/transmission of data. *Hammerling*, 615 F. Supp. 3d at 1090.

**D. Plaintiffs Sufficiently Allege Their Pen Register Claims.**

Defendant likewise did not make any non-9(b) arguments in its first Rule 12 motion regarding Plaintiffs' Pen Register claims. *See* ECF 18; ECF 30 at 4 (Order denying motion to dismiss claims on Rule 9(b) basis). Thus, this Court should not entertain further argument pursuant to Rule 12(g). Once again, Plaintiffs still address the arguments. CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or

decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiffs plead each element of this claim by alleging that the Third Parties' cookies installed by Defendant's software code that cause the Third Parties to attach cookies operate as "pen registers" because they are processes that record the signaling and addressing information, including TCP and/or UDP port numbers, TCP connections, HTTP request header metadata, and network-level and transport-level routing and addressing metadata associated with communications, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites. FAC ¶¶ 63–65, 89, 132–35, 216.

Deckers argues that Plaintiffs "do not allege they ever communicated with the Websites." Mot. at 24. Notably, whether a user communicated with the Website is not an element of the pen register claims. Rather, it is the installation of the device that creates liability. Even if it were a requirement, the FAC clearly contains such allegations, as well as allegations of what information was collected as a result. FAC ¶¶ 132–35, 142, 144, 153–55, 157. Deckers cites *Smith & Wesson* to support its argument, but the complaint allegations are distinguishable. Mot. at 24. Unlike the complaint at issue in *Smith & Wesson*, here Plaintiff Ortiz alleges that he browsed, clicked links, and scrolled the Hoka Website. FAC ¶ 144. Simply visiting the Website caused routing and signaling information to be sent (and intercepted). But the additional actions on the Website also required both routing and signaling information which was intercepted by Third Party cookies placed by Defendant. FAC ¶ 132–35. And, unlike *Smith & Wesson*, Plaintiffs further allege that "header information is transmitted as part of the Plaintiffs' and Website users' HTTP requests and, together with the destination network address and port, enables the receiving Third Party to identify and log the destination and handling characteristics of Plaintiffs' and Website users' communications, separate from any underlying user input or message content." FAC ¶ 134. Accordingly, Defendant's argument is entirely based on both a misapplication of the statute and the demonstrably false premise that Plaintiffs do not allege how they interacted with the Websites, nor what information was collected during Plaintiffs' visits. The Court should reject this argument.

**E. The Court Should Deny Defendant's Motion to Stay Discovery.**

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. "Good cause for staying discovery may exist when the district court is 'convinced that the plaintiff will be unable to state a claim for relief.'" *Reveal Chat Holdco, Ltd. Liab. Co.*, 2020 U.S. Dist. LEXIS 92828, at *4–5 (quoting *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002)). This requires the party seeking a stay to carry a "heavy burden" to make a "strong showing" why discovery should be stayed. *Id*. Defendant's arguments fail.

Discovery is open. That the Court vacated the initial case management conference has no impact because it is the 26(f) conference, not the CMC, that starts discovery. *See* Fed. R. Civ. P. 26(f). Plaintiffs served discovery. Deckers all but refused to provide substantive responses.

In this district, courts use a two prong test to determine whether discovery should be stayed. First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. *Reveal Chat Holdco, Ltd. Liab. Co.*, 2020 U.S. Dist. LEXIS 92828, at *5 (quotation marks omitted). And second, "the court must determine whether the pending motion can be decided absent additional discovery." *Id*. (quotation marks omitted). "In applying this two-factor test, the court must take a preliminary peek at the merits of the pending motion to assess whether a stay is warranted. *Id*. (citation omitted). Here, the Court has already taken more than a "preliminary peek" at the merits, it partially denied Defendant's first motion to dismiss because Plaintiffs *have* stated claims for relief. That Defendant has now raised arguments that it could have raised on its first motion to dismiss in order to make this motion dispositive of Plaintiffs' claims (in violation of the Federal Rules) should not be ignored—or rewarded—here. This is bad faith.

### F. Plaintiffs Request Leave to Amend If Necessary.

Should this Court find any claims in the FAC insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and motion stay should be denied.

Dated: July 7, 2026

**GUTRIDE SAFIER LLP**

*/s/ Patrick J. Branson*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111

Patrick J. Branson (*pro hac vice*)
patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007

*Attorneys for Plaintiffs*